PAUL HASTINGS LLP
D. SCOTT CARLTON (SB# 239151)
scottcarlton@paulhastings.com
TIMOTHY D. REYNOLDS (SB# 274589)
timothyreynolds@paulhastings.com
ALYSSA K. TAPPER (SB# 324303)
alyssatapper@paulhastings.com
JENNIFER YU (SB# 341606)
jenniferyu@paulhastings.com
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California  90071-2228
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

Attorneys for Defendants
DBS BANK LTD.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LODGING USA LENDCO, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>DBS BANK LTD., DBS GROUP HOLDING LTD., and DBS TRUSTEE LTD.,<br><br>Defendants. | CASE NO. 2:23-CV-03408-DSF-JPR<br><br>**DBS BANK LTD.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Complaint Served: April 6, 2023<br>Removal Date: May 4, 2023<br>Date:   July 17, 2023<br>Time:  1:30 p.m.<br>Honorable Dale S. Fischer<br><br>[Notice of Motion and Motion; Declaration of Timothy D. Reynolds; Request for Judicial Notice; and [Proposed] Order filed concurrently herewith] |

DBS BANK LTD.'S MOTION TO DISMISS

# TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | RELEVANT FACTUAL BACKGROUND | | 3 |
| | A. | The Structure of and Parties to the REIT | 3 |
| | B. | The Prospectus | 5 |
| | C. | The Timeline of Events Alleged in the Complaint | 6 |
| | D. | The City of Pasadena's Complaint Against Urban Commons | 8 |
| | E. | The Current Action | 8 |
| III. | ARGUMENT | | 9 |
| | A. | Legal Standard | 9 |
| | B. | Plaintiff's Negligent Misrepresentation Claim Must Be Dismissed | 10 |
| | | 1. Plaintiff Relies Only On Non-Actionable Omissions and Puffery | 11 |
| | | 2. Plaintiff Does Not and Cannot Allege that Any Purported Misstatements Were False When Made | 12 |
| | C. | Plaintiff Cannot Maintain a California UCL Claim | 14 |
| | | 1. Plaintiff Lacks Standing to Assert a UCL Claim | 14 |
| | | 2. Plaintiff Has Not Alleged an Unfair Act Under the UCL | 17 |
| | D. | Plaintiff's Unjust Enrichment Claim Fails | 20 |
| | E. | Plaintiff's Group Pleading Renders the Entire Complaint Deficient | 22 |
| IV. | CONCLUSION | | 24 |

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ajzenman v. Off. of Comm'r of Baseball*,
   492 F. Supp. 3d 1067 (C.D. Cal. 2020) ........................................................... 17

*Akky v. Phemex Fin. Pte, Ltd.*,
   2021 WL 4805191 (C.D. Cal. Aug. 14, 2021) ................................................... 21

*In re Am. Apparel, Inc. S'holder Derivative Litig.*,
   2012 WL 9506072 (C.D. Cal. July 31, 2012) ................................................... 24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................... 9, 24

*Azoulai v. BMW of N. Am. LLC*,
   2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ................................................... 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................... 9, 24

*Berkeley v. Wells Fargo Bank*,
   2016 WL 67221 (N.D. Cal. Jan. 6, 2016) ......................................................... 13

*Brakke v. Econ. Concepts, Inc.*,
   213 Cal. App. 4th 761 (2013) ........................................................................... 14

*Bull v. Chandler*,
   1992 WL 103686 (N.D. Cal. March 12, 1992) ................................................. 14

*C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*,
   867 F.3d 1093 (9th Cir. 2017) ........................................................................... 3

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ...................................................................... 17, 18, 19

*Cheverez v. Plains All Am. Pipeline, LP*,
   2016 WL 4771883 (C.D. Cal. Mar. 4, 2016) ........................................ 2, 15, 22

*ChromaDex, Inc. v. Elysium Health, Inc.*,
   301 F. Supp. 3d 963 (C.D. Cal. 2017) ............................................................... 16

*Colgan v. Leatherman Tool Grp., Inc.*,
   135 Cal. App. 4th 663 (2006) ........................................................................... 20

**TABLE OF AUTHORITIES**

**(Continued)**                                                                                          **Page(s)**

*Coto Settlement v. Eisenberg*,
593 F.3d 1031 (9th Cir. 2010)................................................................4

*Culver Clinic Dev., Inc. v. Harms Software, Inc.*,
2022 WL 79832 (C.D. Cal. Jan. 7, 2022) ...............................................9, 13, 21

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010)................................................................12

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012)................................................................18, 20

*Denims v. Ram Imports, Inc.*,
2021 WL 4814995 (C.D. Cal. Mar. 5, 2021).....................................................15

*Digiacinto v. Europharma, Inc.*,
2023 U.S. Dist. LEXIS 91940 (N.D. Cal. May 25, 2023)................................21

*Drake v. Toyota Motor Corp.*,
2021 WL 2024860 (C.D. Cal. May 17, 2021) .................................................16

*Eur. Travel Agency Corp. v. Allstate Ins. Co.*,
600 F. Supp. 3d 1099 (C.D. Cal. 2022) ..........................................................11

*Fausel v. Shellpoint Mortg. Servicing, LLC*,
2019 U.S. Dist. LEXIS 217416 (C.D. Cal. Aug. 12, 2019) ............................19

*Girard v. Toyota Motor Sales, U.S.A., Inc.*,
2007 WL 9735325 (C.D. Cal. Aug. 6, 2007)........................................2, 17, 21

*Glen Holly Ent. Inc. v. Tektronix, Inc.*,
343 F.3d 1000 (9th Cir. 2003)................................................................1, 12

*Glenn K. Jackson Inc. v. Roe*,
273 F.3d 1192 (9th Cir. 2001)................................................................13

*Harmon v. Hilton Grp.*,
2011 WL 5914004 (N.D. Cal. Nov. 28, 2011) ................................................20

*Hurd v. Bos. Sci. Corp.*,
2023 U.S. Dist. LEXIS 63628 (C.D. Cal. Apr. 10, 2023)................................9

*Huynh v. Quora, Inc.*,
508 F. Supp. 3d 633 (N.D. Cal. 2020)..........................................................16

- iii -                                        DBS BANK LTD.'S MOTION TO
DISMISS

**TABLE OF AUTHORITIES**

**(Continued)**                                                                                  **Page(s)**

*Hydro-Mill Co.. v. Hayward, Tilton & Rolapp Ins. Assocs., Inc.*,
  115 Cal. App. 4th 1145 (2004)...............................................................................10

*Jackson v. Fischer*,
  931 F. Supp. 2d 1049 (N.D. Cal. 2013)...........................................................11, 12

*Johnson v. Maker Ecosystem Growth Holdings, Inc.*,
  2023 WL 2191214 (N.D. Cal. Feb. 22, 2023) ......................................................23

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009).................................................................9, 10, 19

*Knuttel v. Omaze, Inc.*,
  2022 WL 1843138 (C.D. Cal. Feb. 22, 2022).......................................................21

*Korea Supply Co.v Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ........................................................................................15

*Linear Tech. Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 115 (2007)................................................................................16

*Lomingkit v. Apollo Educ. Grp. Inc.*,
  2017 WL 633148 (D. Ariz. Feb. 16, 2017)...........................................................12

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008)..................................................................................9

*MetaQuotes Ltd. v. MetaQuotes Software Corp.*,
  2023 U.S. Dist. LEXIS 86844 (C.D. Cal. May 17, 2023)................................21

*Morris v. Sun Pharma Glob. Inc.*,
  2021 WL 3913191 (C.D. Cal. May 13, 2021) ......................................................23

*Nuvo Rsch. Inc. v. McGrath*,
  2012 U.S. Dist. LEXIS 75852 (N.D. Cal. May 31, 2012)............................2, 21

*Pfizer Inc. v. Super. Ct.*,
  182 Cal. App. 4th 622 (2010)................................................................................20

*Polsky v. Ramnani*,
  2018 WL 6133406 (C.D. Cal. Mar. 26, 2018)................................................23, 24

*Ramin M. Roohipour, M.D., Inc. v. Blue Cross Blue Shield of Ill.*,
  2021 WL 5104383 (C.D. Cal. Oct. 21, 2021)........................................................17

DBS BANK LTD.'S MOTION TO
                                                              DISMISS

**(Continued)**                                                                                          **Page(s)**

*Ramirez v. Wells Fargo Bank, N.A.*,
2016 WL 11757837 (C.D. Cal. Oct. 12, 2016)..................................................10

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006)...............................................................................4

*Roberts v. UBS AG*,
2013 WL 1499341 (E.D. Cal. Apr. 11, 2013).....................................................19

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
72 Cal. App. 4th, 861, 864-64 (1999)................................................................17

*SC Licensing, LLC v. 5 Horizons Grp., LLC*,
2018 WL 5099293 (C.D. Cal. Apr. 12, 2018) ....................................................20

*Shamsian v. Atl. Richfield Co.*,
107 Cal. App. 4th 967 (2003)..............................................................................11

*Sollberger v. Wachovia Sec., LLC*,
2010 WL 2674456 (C.D. Cal. June 30, 2010) ..............................................22, 23

*Sols., Inc. v. Conn. Gen. Life Ins. Co.*,
2015 WL 12843822 (C.D. Cal. Jan. 29, 2015) ...................................................16

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020)....................................................................2, 15, 16

*Stewart v. Kodiak Cakes, LLC*,
537 F. Supp. 3d 1103 (S.D. Cal. 2021) ..............................................................18

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007)..............................................................................23

*Teed v. Chen*,
2023 WL 2277104 (N.D. Cal. Feb. 28, 2023) ....................................................13

*TopDevz, LLC v. LinkedIn Corp.*,
2021 WL 6113003 (N.D. Cal. Dec. 27, 2021).....................................................17

*Trishan Air, Inc. v. Fed. Ins. Co.*,
2008 WL 5532027 (C.D. Cal. Dec. 22, 2008)................................................1, 11

*Vai v. Bank of Am. Nat'l Tr. & Sav. Ass'n*,
56 Cal. 2d 329 (1961) .........................................................................................19

- v -                          DBS BANK LTD.'S MOTION TO
DISMISS

**TABLE OF AUTHORITIES**

**(Continued)**                                                                  **Page(s)**

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003) ..............................................................................10

*Women's Recovery Ctr., LLC v. Anthem Blue Cross Life & Health Ins.
  Co.,*
  2022 WL 757315 (C.D. Cal. Feb. 2, 2022) ........................................................15

*Wu v. Sunrider Corp.,*
  2018 WL 6266577 (C.D. Cal. May 22, 2018) ....................................................22

**Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................................14

Cal. Civ. Code
  § 1573 ....................................................................................................................19
  § 1770 ..............................................................................................................19, 20

Pasadena Municipal Code 4.44 ................................................................................13

**Other Authorities**

Fed. R. Civ. P.
  8 .............................................................................................................................22
  9 .............................................................................................................................10
  9(b) ......................................................................................................9, 10, 19, 23
  12(b)(6) ...................................................................................................................9

DBS BANK LTD.'S MOTION TO
                                                                                     DISMISS

## I.     <u>INTRODUCTION</u>

Plaintiff Lodging USA LendCo, LLC ("Plaintiff" or "LendCo") loaned $89 million to the Eagle Hospitality Real Estate Investment Trust and its subsidiaries (collectively, "EH REIT"). Unable to recover its $89 million following the filing of Chapter 11 bankruptcy, Plaintiff misplaces its ire against Defendant DBS Bank Ltd. ("DBS Bank").[1] DBS Bank acted as the Financial Advisor and Issue Manager for the public offering of Eagle Hospitality Trust's ("EHT") stapled securities, which included units of EH REIT. DBS Bank's role in the offering provides no basis for Plaintiff to seek redress from DBS Bank for EH REIT's failure to pay back a loan. Plaintiff's recourse was in the bankruptcy proceedings filed in Delaware – not here. As a result, the Complaint includes legally inept and illogical claims against DBS Bank for (i) negligent misrepresentation, (ii) violation of California's Unfair Competition Law ("UCL"), and (iii) unjust enrichment. All three claims fail as a matter of law.

First, Plaintiff's claim for negligent misrepresentation relies on non-actionable (1) puffery about DBS Bank's experience and expertise and (2) allegations that DBS Bank "failed to disclose" matters in the prospectus. Those are not actionable misrepresentations under California law. *Glen Holly Ent. Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003) (puffery is not a statement of fact that supports negligent misrepresentation); *Trishan Air, Inc. v. Fed. Ins. Co.,* 2008 WL 5532027, at *4 (C.D. Cal. Dec. 22, 2008) ("It is well-established that California's negligent misrepresentation law covers only affirmative assertions, not implied representations or omissions" (citations omitted).). Moreover, Plaintiff's allegations regarding DBS Bank's "negligence" defy the laws of time. Plaintiff contends that DBS Bank knew or should have known that certain statements were false when the

---

[1] Plaintiff also alleges claims against DBS Trustee Ltd., the trustee of the REIT, and DBS Group Holdings Ltd.—both Singapore entities.

1

DBS BANK LTD.'S MOTION TO DISMISS

prospectus was registered on May 16, 2019. According to Plaintiff, DBS Bank was "grossly negligent" in not knowing that a singular hotel in the REIT (out of a portfolio of 18) had not paid city taxes in May 2019, when in fact those taxes were not due until the end of May 2019. Plaintiff's position is that DBS Bank should have traveled into the future, recognized that one hotel in the portfolio had not paid its future taxes, known that such failure was due to liquidity issues and mismanagement, and disclosed that information to Plaintiff *two weeks before the nonpayment occurred*. The negligent misrepresentation claim fails.

Second, Plaintiff lacks standing under the UCL. While Plaintiff alleges that it seeks restitution, the allegation is a disguised claim for damages in order to meet the threshold requirements for a UCL claim. Restitution does not lie where the conferred benefit was provided to a party other than DBS Bank—here, EH REIT. *Cheverez v. Plains All Am. Pipeline, LP,* 2016 WL 4771883, at *2 (C.D. Cal. Mar. 4, 2016) (dismissing a UCL claim where plaintiffs failed to allege that defendant retained their money or property). Nor can Plaintiff's conclusory request for an injunction lie where Plaintiff undoubtedly has an adequate remedy at law: the $89 million. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844-45 (9th Cir. 2020). In any event, Plaintiff has not stated any "unfair practices" that could give rise to a UCL claim because it grounds them in the same purported misrepresentations that are not actionable under California law.

Third, unjust enrichment is synonymous to the remedy of restitution (the required remedy under a UCL claim). Because Plaintiff relies on the same facts in both claims, Plaintiff's unjust enrichment falls with its UCL claim. *Nuvo Rsch. Inc. v. McGrath*, 2012 U.S. Dist. LEXIS 75852, at *19 (N.D. Cal. May 31, 2012) (dismissing an unjust enrichment claim where Plaintiff asserted a UCL claim); *Girard v. Toyota Motor Sales, U.S.A., Inc.,* 2007 WL 9735325, at *4 n.4 (C.D. Cal. Aug. 6, 2007) (Fischer, J.) (citation omitted) (dismissing an unjust enrichment claim

- 2 -                          DBS BANK LTD.'S MOTION TO DISMISS

where the UCL and negligent misrepresentation claims were dismissed because "unjust enrichment is not a cause of action . . . but rather a general principle . . . synonymous with restitution"). Indeed, Plaintiff only alleges that DBS Bank continued to receive certain fees that it received regardless of the loan, not any benefit conferred on DBS Bank from Plaintiff. This does not amount to unjust enrichment.

In sum, the Complaint creates the illusion of wrongdoing via shotgun allegations that either do not relate to DBS Bank or mean nothing under the law. This puzzle-style pleading fails to mask Plaintiff's poor attempt to establish its case by hindsight. Accordingly, DBS Bank respectfully requests that the Court dismiss DBS Bank from Plaintiff's Complaint with prejudice.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    The Structure of and Parties to the REIT

In late 2017, two real estate investors in California, operating as Urban Commons LLC ("Urban Commons"), formed the "Eagle Hospitality Group" to facilitate the creation of EHT, which was a hospitality stapled group comprised of the EH REIT and the Eagle Hospitality Business Trust. Complaint ¶ 19.[2] A real estate investment trust ("REIT") is a trust that owns, operates, and/or finances income-producing real estate and allows investors to invest in portfolios and earn a share of the income produced by, for example, rental income from the properties. *See C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1096 (9th Cir. 2017).

Urban Commons acted as Sponsor of EHT, contributing its own properties for the REIT, as well as purchasing properties from other sources to stock the initial portfolio. EHT's initial portfolio consisted of 18 hotels across the United States with a total of 5,420 rooms having an aggregated value of over $1.2 billion. Complaint ¶ 22. Urban Commons bought six of these properties from hospitality industry

---

[2] Eagle Hospitality Business Trust was dormant at the listing date of the initial public offering ("IPO"). Complaint ¶ 21.

- 3 -                        DBS BANK LTD.'S MOTION TO DISMISS

investors Frank Yuan and Jerome Yuan operating as ASAP Holdings, LLC ("ASAP"). *Id*. ¶¶ 2, 22.

Due to its experience with REITs, Urban Commons approached DBS Bank to serve as the REIT's Financial Adviser and Issue Manager of the IPO for the REIT. *Id*. ¶ 23. DBS Bank is a leading financial services group in Asia with a presence in 18 markets and headquartered in Singapore. *See* Declaration of Timothy D. Reynolds ("Reynolds Decl.") Decl. Ex. A (Prospectus) at 134.[3] DBS Bank provides a full range of services in personal banking, corporate banking, and investments and has been recognized by numerous US and global financial publications for its leadership, as well as safety and security. *Id.*

In its roles as Issue Manager and Financial Adviser, DBS Bank worked with Urban Commons in conjunction with the IPO. DBS Bank also served alongside five major and respected financial institutions as Joint Bookrunners. Complaint ¶ 23; Reynolds Decl. Ex. A. As set forth in the prospectus for EHT, the Joint Bookrunners would receive a maximum of 3.0% of the total proceeds of the IPO and the issuance of the stapled securities.[4] *Id*. ¶ 24; Reynolds Decl. Ex. A at 84.

The REIT Manager was Eagle Hospitality REIT Management Pte. Ltd. Complaint ¶ 25. As set forth in the prospectus for EHT, the REIT Manager was "indirectly owned" by the principals of Urban Commons. Reynolds Decl. Ex. A at

---

[3] DBS Bank requests judicial notice of documents incorporated by reference in the Complaint and/or matters of public record in its Request for Judicial Notice filed concurrently herewith. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("On a motion to dismiss, we may consider materials incorporated into the complaint or matters of public record."); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (noting that a court "may take judicial notice of court filings and other matters of public record").

[4] For the sake of clarity, Plaintiff alleges that "DBS" would receive an additional one-time "inception fee" of up to $60,000, but as the Prospectus sets forth, that fee was paid to DBS Trustee Ltd. Complaint ¶ 24; Reynolds Decl. Ex. A at 378.

DBS BANK LTD.'S MOTION TO DISMISS

56.  As with a typical REIT, the REIT Manager is expected to implement the key strategies of the REIT, including those for asset management and investments.  *Id*.

The EH REIT would earn income through rental payments in connection with a series of Master Lease Agreements.  *Id*.  As is sometimes customary for a REIT structure, the Master Lease Agreements were entered into between a subsidiary of the EH REIT that directly owned each property and a Master Lessee, which was an indirect wholly owned subsidiary of Urban Commons (*i.e*., the Sponsor).  *Id*.; *see also* Complaint ¶ 25.

**B.    The Prospectus**

All of this information was detailed in the final prospectus of EHT registered on May 16, 2019 (the "Prospectus").  Reynolds Decl. Ex. A.  The Prospectus set forth a number of statements regarding the experience, reputation, and ability of the entities involved with the REIT.  The Prospectus included:  (1) statements highlighting EH REIT's growth and stability via Fixed Rent accounting for 66.0% of its rental income; (2) statements regarding Urban Commons' "established track record" of hotel acquisitions and asset management; (3) statements regarding the REIT Manager's experience in investment, hotel management, financial accounting, treasury and communications; (4) statements that the REIT Manager would "implement pro-active measures to enhance the properties of EHT"; (5) statements regarding the REIT Manager's incorporation of a wholly-owned US subsidiary to oversee US investment activities; (6) statements regarding DBS Bank's background and recognitions; (7) statements that DBS Trustee would safeguard the rights and interests of the investors; and (8) statements that the REIT Manager established internal controls and a business risk management process.  Complaint ¶¶ 29-40.

However, the Prospectus also set forth a number of warnings to investors.  Reynolds Decl. Ex. A at 18, 95-129.  For example, it identified that the Prospectus contained forward-looking statements and disclosed that they "reflect the current views of the REIT Manager and/or the Trustee-Manager concerning future events,

- 5 -                     DBS BANK LTD.'S MOTION TO DISMISS

these statements and financial information necessarily involve risks, uncertainties and assumptions." *Id*. at 18. It further explained that "[a]ctual performance could differ materially from these forward-looking statements and financial information" and that investors "should not place any reliance on" them. *Id*.

Likewise, the Prospectus detailed the various risks relating to the hospitality industry, the properties, the REIT's operations, investing in real estate, investing in stapled securities, the structure of the REIT, and relations between Singapore and the US. *Id*. at 95-129. These risks included that "the Master Lessees may not maintain the Properties properly" and that "the Master Lessees do not have direct control over the Hotel Managers and Hotel Franchisors," and, thus, there is no assurance the properties will be managed, maintained, and operated properly. *Id*. at 106. The Prospectus also disclosed that the REIT itself faced risks associated with debt financing and that there was a risk that it would not be able to make required payments or distributions to investors. *Id*. at 114. The Prospectus also explicitly set forth that EH REIT did "not have an established operating history." *Id*. at 115.

### C. The Timeline of Events Alleged in the Complaint

In October 2018, DBS Bank's team purportedly provided draft copies of the Prospectus to the Yuans. Complaint ¶ 29. At that time, the IPO for EHT was purportedly scheduled to occur on April 18, 2019. *Id*. The IPO was purportedly rescheduled for April 24, 2019. *Id*. ¶ 41. In response to the delay, Plaintiff's affiliated company, ASAP, allegedly sent an email on March 12, 2019, asking why the IPO was delayed and whether it was because it was missing "some filing documents[.]" *Id*. Counsel purportedly responded that the deal was going well and the delay was due to mechanics. *Id*.[5]

---

[5] Plaintiff alleges that Steven L. Litchenfeld of Proskauer Rose responded on behalf of "DBS." Complaint ¶ 41. The Prospectus clearly shows that Proskauer Rose represented EHT and Urban Commons. Reynolds Decl. Ex. A at 889. It did not represent DBS in connection with the offering.

DBS BANK LTD.'S MOTION TO DISMISS

Shortly thereafter, in April 2019, Plaintiff alleges that Urban Commons reported that one of the original members of the banking syndicate could no longer offer its committed portion of the financing facility, resulting in an $89 million shortfall for the IPO's fees and expenses. *Id*. ¶ 42. Plaintiff alleges that in response to this shortfall, DBS Bank approached the principals of ASAP with an option to prevent "the IPO [from being] delayed and [ ] losing the value of its underlying properties": to provide an $89 million loan to EH REIT. *Id*. LendCo was formed to facilitate the payment of this loan. *Id*. ¶ 44.

On May 16, 2019, the final Prospectus was registered containing the purportedly false statements regarding EH REIT's value and DBS Bank's reputation. The $89 million loan was detailed therein. Reynolds Decl. Ex. A at 151. However, Plaintiff alleges the promissory note facilitating that loan was executed a few days later on May 22, 2019 (the "Promissory Note"), which was made to a subsidiary of the EH REIT. Complaint ¶ 45 (alleging that Plaintiff provided an $89 million to EHT US1, Inc.). While a principal of Urban Commons executed the Promissory Note on behalf of LendCo, Plaintiff alleges that LendCo was subsequently turned over to the Yuans. *Id*. ¶ 44. Two days later, on May 24, 2019, EHT's stapled securities (which includes the EH REIT) were issued to investors and listed on the SGX. *Id*. ¶ 46. The IPO ultimately resulted in $565 million in investor funds.

Around a year later, Plaintiff alleges that a bank issued a notice of default and acceleration to EHT, making its $341 million financing facility immediately payable. *Id*. ¶ 47. On March 24, 2020, EHT voluntarily suspended trading as a result of defaulting on its financing.[6] *Id*. On January 18, 2021, Plaintiff alleges that DBS Bank caused the EH REIT to file Chapter 11 in the District of Delaware. *Id*. ¶ 55. As a result, 15 of the 18 hotel properties were sold through the bankruptcy proceeding.

---

[6] The Complaint sets forth a number of post-offering events alleging wrongdoing by Urban Commons and removal of the REIT Manager, which are not relevant to Plaintiff's claims against DBS Bank. Complaint ¶¶ 51-54.

DBS BANK LTD.'S MOTION TO DISMISS

*Id*.  There were purportedly numerous failures of the Master Lessees to pay rent, some of which predated COVID-19, but were exacerbated by the pandemic.  *Id*.

Plaintiff, however, hinges its Complaint on two management issues that existed "at the time DBS made the aforementioned misleading statements to Plaintiff" in the May 16, 2019 final Prospectus.  *Id*.  *First*, Urban Commons failed to pay certain fees related to Marriott in May 2019.  *Id*.  *Second*, Urban Commons failed to pay tourism and occupancy taxes at the Sheraton Pasadena dating back to May 2019, referencing the dispute with the City of Pasadena, noted by the EH REIT's auditors.  *Id*.

**D.  The City of Pasadena's Complaint Against Urban Commons**

On April 9, 2020, the City of Pasadena initiated a proceeding against Urban Commons and its related entities.  Reynolds Decl. Ex. B (Sheraton TOT Complaint).  The City of Pasadena alleged that Urban Commons failed to remit TOT and TBID assessments from May 2019 through February 2020.  *Id*. ¶ 14.  Specifically, the City of Pasadena set forth that Pasadena Municipal Code requires payment of TOT and TBID at the end of each month and Urban Commons missed those payments beginning from the month of May 2019.  *Id*.  ¶¶ 10-11.  However, the Complaint sets forth that the City of Pasadena did not notify Urban Commons of any failure to pay TOT and TBID until November 1, 2019.  *Id*. ¶ 16.  This notified Urban Commons regarding July, August, and September 2019.  *Id*.  Urban Commons received another notice on February 25, 2020, notifying Urban Commons of the failure to pay from May 2019 through November 2019.  *Id*. ¶ 17.

**E.  The Current Action**

Plaintiff filed its Complaint in the Superior Court of California for the County of Los Angeles on March 23, 2023, alleging claims for (1) negligent misrepresentation, (2) violation of California's Unfair Competition Law, and (3)

- 8 -                    DBS BANK LTD.'S MOTION TO DISMISS

unjust enrichment.  On May 4, 2023, DBS Bank timely removed the action to this Court on the basis of diversity jurisdiction.  Dkt. No. 1.

## III.   ARGUMENT

### A.   Legal Standard

Under Federal Rule of Civil Procedure Rule 12(b)(6), dismissal is required "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Whether a complaint contains sufficient factual matter turns on whether the claim stated is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

Where the alleged claims sound in fraud, the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to the entire complaint. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (affirming the application of Rule 9(b) to the unfairness prong of the UCL because the claim sounded in fraud); *Hurd v. Bos. Sci. Corp.*, 2023 U.S. Dist. LEXIS 63628, at *7 (C.D. Cal. Apr. 10, 2023) ("In the Ninth Circuit, claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements.") (citation omitted) *Culver Clinic Dev., Inc. v. Harms Software, Inc.*, 2022 WL 79832, at *9 (C.D. Cal. Jan. 7, 2022) (Fischer, J.) ("Claims for negligent misrepresentation – as claims grounded in fraud – are subject to the heightened pleading requirements of Rule 9(b) and must be pleaded with particularity"). "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).  Rule 9(b)

DBS BANK LTD.'S MOTION TO DISMISS

requires Plaintiff to state the circumstances of fraud with particularity, alleging the "who, what, when, where, and how" of the fraudulent activity. *Id*. at 1106.

At minimum, Plaintiff's claims for negligent misrepresentation and unfair practices under the UCL are subject to Rule 9(b)'s heightened pleading requirement. The entirety of Plaintiff's Complaint is based on purported misrepresentations and omissions, which Plaintiff alleges induced it to provide a loan to EHT REIT. While those purported misrepresentations and omissions are not actionable (as described *infra*), Plaintiff's claims are, nonetheless, grounded in a fraudulent course of conduct that invokes Rule 9(b).[7] *Kearns*, 567 F.3d at 1125-26 (allegations that defendant's marketing materials and representations led the plaintiff to believe the vehicles were inspected by specially trained technicians and thus induced him into purchasing a vehicle sounded in fraud and invoked Rule 9(b)); *Ramirez v. Wells Fargo Bank, N.A.,* 2016 WL 11757837, at *4 (C.D. Cal. Oct. 12, 2016) (Fischer, J.) ("In federal court, UCL claims are subject to the heightened pleading standards of Rule 9").

### B.    Plaintiff's Negligent Misrepresentation Claim Must Be Dismissed

Plaintiff's negligent misrepresentation claim is defeated by well-established law. A claim for negligent misrepresentation under California law requires:  (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage. *See Shamsian v. Atl. Richfield Co.*, 107 Cal. App. 4th 967, 984 (2003).

---

[7] If the Court holds that Plaintiff's negligent misrepresentation claim does not sound in fraud, it is time-barred by the statute of limitations. *Hydro-Mill Co.. v. Hayward, Tilton & Rolapp Ins. Assocs., Inc.*, 115 Cal. App. 4th 1145, 1156 (2004) (two-year statute of limitations where negligent misrepresentation claim more closely resembles negligence). Even under the most liberal reading of Plaintiff's Complaint, the statute would have run from the bankruptcy proceeding on January 18, 2021. Complaint ¶ 55. Thus, Plaintiff was required to assert its claims by January 19, 2023. It did not do so until March 23, 2023.

- 10 -                    DBS BANK LTD.'S MOTION TO DISMISS

### 1.    **Plaintiff Relies Only On Non-Actionable Omissions and Puffery**

It is black letter law that negligent misrepresentation requires a positive assertion, not simply a failure to disclose. *Trishan Air,* 2008 WL 5532027, at *4 ("It is well-established that California's negligent misrepresentation law covers only affirmative assertions, not implied representations or omissions"); *see also Eur. Travel Agency Corp. v. Allstate Ins. Co.*, 600 F. Supp. 3d 1099, 1105 (C.D. Cal. 2022) (Fischer, J.) (explaining that "a positive assertion is required; an omission or an implied assertion or representation is not sufficient").  Here, omissions comprise the majority of Plaintiff's negligent misrepresentation claim.  Plaintiff alleges that DBS *failed to disclose* (1) that it had failed to adequately vet Urban Commons, (2) the lack of due diligence conducted by DBS Bank, and (3) that DBS Bank did not use its internal controls.  Complaint ¶ 40.; *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1075 (N.D. Cal. 2013) (dismissing with prejudice a negligent misrepresentation claim based on failing to disclose that officers and directors did not have successful track records because a positive assertion is required).  Setting aside that Plaintiff alleges no facts demonstrating that DBS Bank had in fact failed in any of these capacities, Plaintiff cannot use these omissions to assert its negligent misrepresentation claim under California law.[8]

---

[8] To the extent Plaintiff attempts to argue DBS Bank had a duty to disclose, Plaintiff does not allege facts giving rise to such duty via a fiduciary relationship or otherwise and, more importantly, the majority of courts hold that a duty to disclose does not suffice to support a negligent misrepresentation claim. *Jackson*, 931 F. Supp. 2d at 1068 ("While the courts in some states have held that failure to disclose where there is a duty to disclose may suffice to support a negligent misrepresentation claim, the California Court of Appeal held in Wilson v. Century 21 Great Western Realty, [sic] 15 Cal. App. 4th 298, 18 Cal. Rptr. 2d 779 (1993) that based on the California statutory language, negligent misrepresentation specifically requires a 'positive assertion.'") (citations omitted).

Trying to disguise these omissions as misstatements, Plaintiff ties each of the above omissions to certain statements within the Prospectus regarding (1) DBS Bank's experience with REITs, (2) the stability of the EH REIT, and (3) the EH REIT's internal controls, respectively, and claims they were misleading because they omitted the above information. *Id.* None of the omissions demonstrate why these statements were purportedly false. They bear no relation to the assertion in the statement. Without the necessary facts demonstrating the statements' falsity, Plaintiff pleads only omissions. Regardless, these "generalized, vague and unspecified assertions" regarding the Issue Manager and REIT Manager's experience and the safety of the REIT are non-actionable "puffery." *See Tektronix*, 343 F.3d at 1015 (puffery is not a statement of fact that supports negligent misrepresentation); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010) ("When valuing corporations, however, investors do not rely on vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers."); *Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at *7-8 (N.D. Cal. Apr. 13, 2017) (generalized assertions regarding a vehicles "safety" or "durab[ility]" are mere puffery); *Lomingkit v. Apollo Educ. Grp. Inc.*, 2017 WL 633148, at *16 (D. Ariz. Feb. 16, 2017) ("Phrases like 'a superior' experience, 'meaningful progress,' 'differentiate,' and 'significant enhancements' are classic examples of corporate puffery because they do not provide any objective understanding into what they describe.'").

## 2. Plaintiff Does Not and Cannot Allege that Any Purported Misstatements Were False When Made

The negligent misrepresentation claim also fails because the allegations in the Complaint do not lead to a reasonable inference that any statements or omissions were false when made. *See Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1200 n.2 (9th Cir. 2001) (negligent misrepresentation requires a past or existing material fact); *Culver Clinic Dev.*, 2022 WL 79832, at *9 (Fischer, J.) (negligent misrepresentation

- 12 -                    DBS BANK LTD.'S MOTION TO DISMISS

claim was dismissed because plaintiffs did not plead that defendant knew or should have known that the statements were false when made); *Berkeley v. Wells Fargo Bank*, 2016 WL 67221, at \*10 (N.D. Cal. Jan. 6, 2016) (holding that negligent misrepresentation cause of action failed to state a claim where "[e]ven drawing all reasonable inferences in Plaintiff's favor, the [complaint] does not adequately allege that [the statement] was false when made." (alterations added).); *Teed v. Chen,* 2023 WL 2277104, at \*5 (N.D. Cal. Feb. 28, 2023) (same).

For example, Plaintiff alleges that the Prospectus contained false representations regarding the value and experience of the REIT Manager and Urban Commons. Complaint ¶ 40. To establish their falsity, Plaintiff alleges that "DBS knew or was grossly negligent and/or reckless for not knowing that Urban Commons was failing in its duty as REIT Manager around the same time as the IPO" and cites the City of Pasadena litigation against Urban Commons. *Id.* But this assertion is defeated by simply looking at the timeline of allegations. DBS Bank could not have known about the failure of one of 18 hotels in the REIT to pay city taxes to a municipality when the final Prospectus was registered on May 16, 2019 (and certainly could not have known when drafts were allegedly provided to ASAP in 2018). Indeed, Plaintiff's own allegations confirm that Urban Commons only failed to pay the required TOT and TBID in May 2019—the same month the final Prospectus was registered. Moreover, the relevant municipal codes governing TOT and TBID confirm that the taxes are due at the end of the month. Reynolds Decl. Ex. B ¶¶ 10-11; *see also* Pasadena Municipal Code 4.44. Thus, at a minimum, Urban Commons was *not in violation of this code until after the final Prospectus was registered on May 16*. Nor was Urban Commons notified of this failure until February 2020. Reynolds Decl. Ex. B ¶ 17. Accordingly, under Plaintiff's flawed logic, DBS Bank was "grossly negligent" in not knowing something before it occurred. Complaint ¶ 40. This is impossible.

- 13 -                    DBS BANK LTD.'S MOTION TO DISMISS

The same is true for counsel's purported email in response to ASAP's email regarding the delay in the IPO launch. Plaintiff cannot set forth any facts that would plausibly allege that EHT's and Urban Commons' counsel's statement *in April 2019* (a month before any TOT violation) that the IPO's delay was due to mechanics was false when made. Complaint ¶ 41. Plaintiff has not identified a single fact that would support that DBS Bank could have been aware of any issues with the REIT at that time. *Brakke v. Econ. Concepts, Inc.*, 213 Cal. App. 4th 761, 769 (2013) (affirming dismissal of negligent misrepresentation where the plaintiff "failed to allege the statements by defendants' agents concerning [the issue] were false when made." (alteration added).).[9] Accordingly, the negligent misrepresentation claim can be dismissed with prejudice based on multiple independent grounds.

### C. Plaintiff Cannot Maintain a California UCL Claim

The California UCL prohibits "any unlawful, unfair or fraudulent business act or practice[.]" Cal. Bus. & Prof. Code § 17200. Plaintiff claims that DBS Bank violated the California UCL by engaging in "unfair" acts. Complaint ¶¶ 66-75. Plaintiff's claim must be dismissed for several reasons.

### 1. Plaintiff Lacks Standing to Assert a UCL Claim

Plaintiff's UCL claim fails as a matter of law because it has not—and cannot—plausibly allege facts establishing that it has standing under the UCL.

***First***, the UCL is equitable in nature, providing only for injunctive relief and restitution. *Korea Supply Co.v Lockheed Martin Corp.*, 29 Cal. 4th 1134, 114 (2003); *see also Sonner*, 971 F.3d at 844. Plaintiff attempts to satisfy these elements, broadly suggesting that it seeks "to obtain restitution and disgorgement of all monies

---

[9] Moreover, the Prospectus contained disclosures of risks associated with the EH REIT's lack of control over the Master Lessees or the Hotel Managers in the management of the properties or in the payment of rent and other expenses. Reynolds Decl. Ex. A at 106. *See Bull v. Chandler*, 1992 WL 103686, at *6 (N.D. Cal. March 12, 1992) (finding no justifiable reliance where the plaintiff was given offering materials that had plain disclosures of risk).

DBS BANK LTD.'S MOTION TO DISMISS

generated as a result of such practices." Complaint ¶ 75. But this is just a request for damages dressed as the necessary remedies required under the UCL. Plaintiff does not seek return of any money or property *from DBS* to Plaintiff. The Complaint confirms that Plaintiff claims $89 million in connection with the loan it made to *EH REIT*. Complaint ¶¶ 72, 74. Nowhere does Plaintiff allege that DBS Bank has wrongfully obtained Plaintiff's loan proceeds. *Cheverez,* 2016 WL 4771883, at *2 (dismissing a UCL claim where plaintiffs failed to allege that defendant retained their money or property); *see also Women's Recovery Ctr., LLC v. Anthem Blue Cross Life & Health Ins. Co.,* 2022 WL 757315, at *10 (C.D. Cal. Feb. 2, 2022) (dismissing UCL claim seeking "a dressed up version of monetary damages"). In fact, Plaintiff alleges that DBS Bank continued to collect its fees from the IPO, as it would have regardless of Plaintiff's loan. Complaint ¶¶ 24, 77; *Cheverez,* 2016 WL 4771883, at *3 ("The profits which Defendants gained from their refusal to properly monitor their pipelines cannot be the same property Plaintiffs lost, because Defendants would have gained those profits regardless of whether Plaintiffs were injured[.]"); *Denims v. Ram Imports, Inc.,* 2021 WL 4814995, at *4 (C.D. Cal. Mar. 5, 2021) (Fischer, J.) (noting that plaintiff was not seeking the return of money or property that was once in its possession and did not have a vested interest in defendant's revenues and profits under the UCL). What Plaintiff seeks here are damages, and that is not permitted under the UCL.

Plaintiff's vague allegations that it "seeks to enjoin further unfair business practices by DBS" fare no better against dismissal. Complaint ¶ 75. UCL claims seeking an injunction require allegations showing why a legal remedy would be inadequate. *Sonner*, 971 F.3d at 844 (district court did not err for dismissing UCL claim where plaintiff failed to establish that she lacked an adequate remedy at law); *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 662 (N.D. Cal. 2020) (collecting cases). Plaintiff fails to even offer a conclusory allegation that it lacks an adequate remedy

- 15 -                                        DBS BANK LTD.'S MOTION TO DISMISS

at law, let alone plead facts to support a plausible basis for that conclusion. As explained, Plaintiff plainly seeks compensatory damages for its loss of the $89 million loan. Under Plaintiff's own allegations, there is no reason to believe that damages are insufficient to make Plaintiff—or indeed, any other potential plaintiff whole. *Drake v. Toyota Motor Corp.,* 2021 WL 2024860, at *7 (C.D. Cal. May 17, 2021) ("Though Plaintiffs argue injunctive relief is necessary to prevent future harm, there is no reason to think legal remedies, like damages, will not be sufficient to make future plaintiffs whole" (citations omitted.)).

***Second***, Plaintiff is neither a "consumer" nor "competitor" of DBS Bank. The UCL is not intended to provide relief for entity plaintiffs. *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007) (dismissing a UCL claim because the alleged victims were "neither competitors nor powerless unwary consumers," but were "corporate customers . . ., each of which presumably has the resources to seek damages or other relief.") (internal quotation marks omitted). In other words, "a dispute between commercial parties over their economic relationship" does not give rise to a UCL claim." *ChromaDex, Inc. v. Elysium Health, Inc.*, 301 F. Supp. 3d 963, 975 (C.D. Cal. 2017) (dismissing UCL claim because "[t]he case does not involve the general public or individual consumers who are parties to a contract"). Plaintiff is an entity that was created for the purpose of the IPO and facilitating the loan at issue in the Complaint. Complaint ¶¶ 9, 44. *IV Sols., Inc. v. Conn. Gen. Life Ins. Co.,* 2015 WL 12843822, at *17 (C.D. Cal. Jan. 29, 2015) (UCL was enacted to protect consumers and competitors from unfair competition).

Moreover, nothing in the Complaint suggests that Plaintiff, the principals behind Plaintiff (i.e., the Yuans), nor the Yuan's investment entity (i.e., ASAP Holdings, LLC) are unsophisticated parties in need of the protections of the UCL. *TopDevz, LLC v. LinkedIn Corp.*, 2021 WL 6113003, at *3 (N.D. Cal. Dec. 27, 2021) (evaluating the sophistication of the entities). Rather, by Plaintiff's own allegations,

- 16 -                                   DBS BANK LTD.'S MOTION TO DISMISS

the principals behind Plaintiff are "hospitality industry investors" who were able to provide six hotel properties to Urban Commons to use in the REIT portfolio and provide an $89 million loan. Complaint ¶¶ 2, 44. LendCo is not an appropriate plaintiff for a UCL claim.

### 2.    Plaintiff Has Not Alleged an Unfair Act Under the UCL

Even if Plaintiff had standing under the UCL, it would still fail to state a viable claim. Plaintiff hinges its 17200 claim on "unfair" practices, grounded in allegations of misrepresentations.[10] Complaint ¶ 70 ("DBS engaged in business acts and practices deemed 'unfair' under the UCL[.]"). To determine whether conduct is "unfair" for purposes of the UCL, courts apply one of two tests: (1) the balancing test, *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th, 861, 864-64 (1999), or the tethering test, *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (1999). Plaintiff has not adequately alleged an unfair act under either test.

Under the balancing test, "'unfair' conduct occurs when that practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Davis v. HSBC Bank Nev.,*

[10] Plaintiff does not allege a UCL claim based on "unlawful" or "fraudulent" practices. Complaint ¶¶ 66-75 (alleging the tests for unfair practices). Regardless, Plaintiff could not allege a UCL claim under these other prongs. Plaintiff has not asserted an underlying violation of law that could serve as the predicate of a UCL claim. *Ajzenman v. Off. of Comm'r of Baseball,* 492 F. Supp. 3d 1067, 1080 (C.D. Cal. 2020) (Fischer, J.) (dismissing UCL claim based on unlawful practices where plaintiff failed to allege the underlying violation of a statute). Nor has Plaintiff satisfied the fraudulent prong for the same reasons it has failed to state a negligent misrepresentation claim. *See supra* Section III.B. *Ramin M. Roohipour, M.D., Inc. v. Blue Cross Blue Shield of Ill.*, 2021 WL 5104383, at *6 (C.D. Cal. Oct. 21, 2021) (Fischer, J.) (dismissing a negligent misrepresentation claim and UCL claim based on fraudulent practices because plaintiff did not adequately allege a misrepresentation); *Girard, Inc.,* 2007 WL 9735325, at *5 (Fischer, J.) (advertisement with cautionary language was unlikely to deceive under the UCL as a matter of law).

- 17 -                    DBS BANK LTD.'S MOTION TO DISMISS

*N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (citation omitted). Nothing alleged in the complaint supports the conclusion that the conduct alleged by Plaintiff meets this test. Plaintiff offers a conclusory allegation to that effect (Complaint ¶ 72), but the actual conduct alleged cannot amount to "unfair" acts as a matter of law. *First*, Plaintiff claims "duress," but alleges only that DBS Bank proposed a solution to support the IPO. Complaint ¶ 42; *see supra* Section II.C. On the facts alleged there is no reason to conclude that DBS Bank did anything other than purportedly offer a solution to potentially losing the IPO and, accordingly, the value of the underlying properties supporting it. This is not immoral or unscrupulous. Nor does Plaintiff allege that DBS Bank owed Plaintiff a duty to seek the funds elsewhere. Plaintiff's speculation that DBS Bank may have had another way to make up the shortfall does not satisfy this requirement. Complaint ¶ 42. *Second*, to the extent Plaintiff relies on the Prospectus to support its UCL claim, as explained *supra*, such statements are not actionable misrepresentations that could demonstrate "unfair practices." *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1138 (S.D. Cal. 2021) ("'[G]eneralized, vague, and unspecified assertions [in advertisements] constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable' under the UCL" (second alteration added).).

The tethering test requires the UCL claim to be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-Tech,* 20 Cal. 4th at 186-87. But, contrary to Plaintiff's representation in its Complaint that the tethering be to "specific constitutional, statutory, or regulatory provisions," (Complaint ¶ 70), the test is more specific, requiring the unfair practice to "threaten an incipient violation of an *antitrust law*, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens harm or competition." *Cel-Tech*, 20 Cal. 4th at 187 (emphasis added).

- 18 -                    DBS BANK LTD.'S MOTION TO DISMISS

Plaintiff appears to invoke California Civil Code §§ 1770 and 1573 as the statutory provisions DBS Bank's conduct purportedly violated. Complaint ¶ 71. Section 1573 governs constructive fraud. Cal. Civ. Code § 1573. Setting aside that Section 1573 is not an antitrust law, Plaintiff alleges no facts to support that DBS Bank owed any duty to LendCo—a company created to facilitate a loan, not from LendCo to DBS Bank, but from LendCo to EH REIT. *See, e.g.*, *Fausel v. Shellpoint Mortg. Servicing, LLC*, 2019 U.S. Dist. LEXIS 217416, at *22 (C.D. Cal. Aug. 12, 2019) (dismissing UCL claim tethered to 1573 because it required Rule 9(b) specificity and it did not meet that standard); *Vai v. Bank of Am. Nat'l Tr. & Sav. Ass'n,* 56 Cal. 2d 329, 338 (1961) (key factor in existence of fiduciary relationship for purposes of constructive fraud lies in control by one person over property of another); *Roberts v. UBS AG,* 2013 WL 1499341, at *11 (E.D. Cal. Apr. 11, 2013) (dismissing constructive fraud claims because complaint did not depict a confidential relationship between the bank and plaintiffs). The Complaint is also devoid of any factual allegations supporting fraudulent conduct in purportedly inducing Plaintiff to provide the loan. At most, Plaintiff alleges that Plaintiff was asked whether it would provide a loan and it did so. That later—with the benefit of hindsight—it turns out that the loan was not prudent does not give rise to fraudulent conduct by DBS Bank.

Tethering the UCL to Section 1770 similarly fails. The Consumer Legal Remedies Act is set forth in Section 1770 of the Civil Code. It prohibits "unfair or deceptive acts or practices" in "the sale . . . of goods or services to any consumer." *Kearns*, 567 F.3d at 1125. Plaintiff fails to allege facts—because it cannot—to explain how a bank acting as an issue manager of a REIT could violate the spirit of a law that protects consumers of goods and services, in connection with requesting a loan from a participant in the REIT. Indeed, the CLRA sets forth 27 proscribed acts or practices and, tellingly, Plaintiff does not invoke a single one. Cal. Civ. Code. § 1770. Accordingly, Plaintiff has failed to allege unfair acts under the tethering test.

- 19 -  DBS BANK LTD.'S MOTION TO DISMISS

*Davis*, 691 F.3d at 1170 (affirming dismissal of "unfair" prong UCL claim under tethering test where "[the plaintiff] advances no factual allegations to support the claim that the omission . . . in [the defendant]'s advertisements threatens to violate the letter, policy, or spirit of the antitrust laws, or that it harms competition") (alteration added); *Harmon v. Hilton Grp.*, 2011 WL 5914004, at *9 (N.D. Cal. Nov. 28, 2011) ("Plaintiff failed to allege any facts establishing the violation of any public policy tethered to a statutory or regulatory provision, including the CLRA, as discussed below.  Therefore, Plaintiff has failed to plead a substantive violation of the UCL under the unfair prong according to the test applied by California courts under the first line of cases."), *aff'd sub nom. Harmon v. Hilton Grp.*, PLC, 554 F. App'x 634 (9th Cir. 2014).  Thus, Plaintiff has not stated a claim under the UCL.

### D.  Plaintiff's Unjust Enrichment Claim Fails

Plaintiff's unjust enrichment claim is also untenable for three reasons.

***First***, unjust enrichment is a remedy, synonymous with restitution, and is an available remedy under the UCL.  *Pfizer Inc. v. Super. Ct.,* 182 Cal. App. 4th 622, 631 (2010); *Colgan v. Leatherman Tool Grp., Inc.,* 135 Cal. App. 4th 663, 694 (2006).  Plaintiff bases its unjust enrichment claim on the exact same circumstances regarding the $89 million loan as its UCL claims.  *Compare* Complaint ¶¶ 76-79 *with* ¶¶ 66-75.  As explained, these circumstances do not sufficiently plead an underlying actionable wrong that would allow either a UCL or an unjust enrichment claim to lie. *SC Licensing, LLC v. 5 Horizons Grp., LLC*, 2018 WL 5099293, at *4 (C.D. Cal. Apr. 12, 2018) (Fischer, J.) (dismissing unjust enrichment claim that vaguely alleged that counter-defendant acted "deceptively" when it implied to counter-plaintiff, prior to counter-plaintiff entering an agreement, that goods would be manufactured by counter-plaintiff).  Thus, where Plaintiff's UCL claim is legally defective, the law requires dismissal of the tag along unjust enrichment claim based on the same inadequate facts. *Nuvo Rsch.*, 2012 U.S. Dist. LEXIS 75852, at *19 (dismissing

- 20 -                    DBS BANK LTD.'S MOTION TO DISMISS

unjust enrichment claim as superfluous where Plaintiff also asserted a legally defective UCL claim); *Digiacinto v. Europharma, Inc.*, 2023 U.S. Dist. LEXIS 91940, at *4 (N.D. Cal. May 25, 2023) (dismissing an unjust enrichment claim after dismissing a UCL claim because "it must rise or fall with the [UCL] claims"); *Girard*, 2007 WL 9735325, at *4 n.4 (Fischer, J.) (dismissing an unjust enrichment claim where the UCL and negligent misrepresentation claims were dismissed).[11]

***Second***, where an underlying actionable wrong is not alleged, courts generally construe standalone unjust enrichment claims as quasi-contract claims seeking restitution. *Culver Clinic Dev.,* 2022 WL 79832, at *10-11 (Fischer, J.).  In order to plead such a claim, a plaintiff must plead the absence of an enforceable contract.  *Id*. (dismissing an unjust enrichment claim because plaintiff failed to plead the absence of an enforceable contract even when there was no viable breach of contract claim against defendant).  Here, Plaintiff has not sufficiently alleged fraud or the absence of an enforceable contract.   If anything, Plaintiff pleads the existence of the Promissory Note with EH REIT governing the payment of the loan.  Plaintiff's claim, thus, is grounded in contract—albeit against the wrong party.   Complaint ¶ 45. Plaintiff's claim fails for this independent reason.[12]

---

[11]  Absent particular circumstances, California courts often refuse to recognize independent claims for unjust enrichment. *MetaQuotes Ltd. v. MetaQuotes Software Corp.*, 2023 U.S. Dist. LEXIS 86844, at *27 (C.D. Cal. May 17, 2023) ("unjust enrichment is not an independent cause of action"); *Knuttel v. Omaze, Inc.*, 2022 WL 1843138, at *13 (C.D. Cal. Feb. 22, 2022) ("Omaze correctly argues that Plaintiffs' unjust enrichment claim should be dismissed because California does not recognize a cause of action for unjust enrichment."); *Akky v. Phemex Fin. Pte, Ltd.*, 2021 WL 4805191, at *3 (C.D. Cal. Aug. 14, 2021) (same).

[12] To the extent Plaintiff's unjust enrichment claim is grounded in a quasi-contract theory, it is governed by a two-year statute of limitations period.  *Wu v. Sunrider Corp.,* 2018 WL 6266577, at *5 (C.D. Cal. May 22, 2018) (Fischer, J.) (dismissing an unjust enrichment claim), *aff'd*, 793 F. App'x 507 (9th Cir. 2019).  Plaintiff would have needed to plead its claim by January 19, 2023.  It did not.

- 21 -                      DBS BANK LTD.'S MOTION TO DISMISS

***Third***, and regardless of whether a separate viable claim exists, Plaintiff's concocted unjust enrichment claim strains logic and reason. Plaintiff's unjust enrichment allegations are grounded in a Promissory Note for $89 million provided to EH REIT purportedly to support the IPO for the REIT. Plaintiff does not claim that DBS Bank ever obtained this money. Rather, Plaintiff claims that DBS Bank continued to collect its fees as Issue Manager that it had been receiving prior to (and divorced from any connection to) the loan. Complaint ¶ 76; *Cheverez,* 2016 WL 4771883, at *3 (profits gained regardless of whether plaintiff was injured cannot amount to restitution). Nothing that Plaintiff provided unjustly enriched *DBS Bank*, and Plaintiff cannot allege otherwise. Even under the most generous reading of Plaintiff's complaint, these facts simply do not give rise to any unjust enrichment.

### E.    Plaintiff's Group Pleading Renders the Entire Complaint Deficient

Notwithstanding the Complaint's legal infirmities in pleading negligent misrepresentation, UCL, and unjust enrichment, Plaintiff's Complaint fails for an independent reason—its shotgun pleading is improper under Rule 8. *See Sollberger v. Wachovia Sec., LLC,* 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) ("Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations."). "[C]ourts in this circuit have held that a complaint fails to state a claim and must be dismissed if it does not indicate which individual defendant or defendants are responsible for which alleged wrongful act." *Polsky v. Ramnani*, 2018 WL 6133406, at *4 (C.D. Cal. Mar. 26, 2018) (citation omitted).

Here, Plaintiff improperly groups together all Defendants and fails to distinguish which conduct is attributed to each defendant. Complaint p. 1; *see also generally id*. (referring repeatedly to only "DBS" throughout the Complaint). *See Sollberger*, 2010 WL 2674456, at *4 ("One common type of shotgun pleading comes

- 22 -                   DBS BANK LTD.'S MOTION TO DISMISS

in cases with multiple defendants where the plaintiff uses the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants did wrong.'"). For all of the conduct alleged, Plaintiff simply uses the term "DBS," without indicating which entity is purportedly responsible for the conduct or representation. [13] What results is a complaint that fails to give DBS Bank the required notice of the claim being asserted and the grounds upon which it rests. *See Morris v. Sun Pharma Glob. Inc.*, 2021 WL 3913191, at *3 (C.D. Cal. May 13, 2021) ("This type of pleading makes it impossible for each of the defendants to adequately answer Plaintiff's allegations."); *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (Under Rule 9(b), where plaintiff has sued more than one defendant, such plaintiff must allege facts to "inform each defendant *separately* of the allegations surrounding his alleged participation in the fraud.") (emphasis added) (citation omitted); *Johnson v. Maker Ecosystem Growth Holdings, Inc.*, 2023 WL 2191214, at *5 (N.D. Cal. Feb. 22, 2023) (attributing all alleged misstatements to "Defendant" as a collective reference to the defendants was improper for a negligent misrepresentation claim under Rule 9(b)).

Plaintiff's group pleading, thus, renders its claims implausible under the pleading standards required by *Twombly* and *Iqbal* because the Court and the defendants cannot determine whether the allegations against ***each defendant*** rises above the speculative level. *See, e.g.*, *Polsky*, 2018 WL 6133406, at *4; *In re Am. Apparel, Inc. S'holder Derivative Litig.*, 2012 WL 9506072, at *41 (C.D. Cal. July 31, 2012) ("a complaint that repeatedly refers to defendants collectively, without differentiation, is more likely to run afoul of the plausibility standard of *Iqbal* and *Twombly*"). The Complaint, as a whole, fails for this independent reason.

[13] For purposes of this Motion, DBS Bank assumes that Plaintiff is attributing all conduct to DBS Bank to fully respond to Plaintiff's allegations, which must be accepted as true here. In doing so, DBS Bank does not waive any ability to later challenge which conduct can properly be attributed to it.

- 23 -                    DBS BANK LTD.'S MOTION TO DISMISS

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, DBS Bank respectfully requests that the Court grant its Motion to Dismiss without leave to amend.

DATED:  June 12, 2023

                                PAUL HASTINGS LLP
                                D. SCOTT CARLTON
                                TIMOTHY D. REYNOLDS
                                ALYSSA K. TAPPER
                                JENNIFER YU

By:*/s/ D. Scott Carlton*
      D. SCOTT CARLTON

Attorneys for Defendants
DBS BANK LTD.

## CERTIFICATION

The undersigned, counsel of record for DBS Bank LTD, certifies that this brief contains 6,970 words, which complies with the word limit of L.R. 11-6.1.

Date:  June 12, 2023

                          By: */s/ D. Scott Carlton*
                              D. SCOTT CARLTON

DBS BANK LTD.'S MOTION TO DISMISS