PAUL HASTINGS LLP
D. SCOTT CARLTON (SB# 239151)
scottcarlton@paulhastings.com
TIMOTHY D. REYNOLDS (SB# 274589)
timothyreynolds@paulhastings.com
ALYSSA K. TAPPER (SB# 324303)
alyssatapper@paulhastings.com
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California  90071-2228
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

Attorneys for Defendant DBS BANK LTD.
and Specially Appearing Defendant
DBS TRUSTEE LTD.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LODGING USA LENDCO, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>DBS BANK LTD., DBS GROUP HOLDING LTD., and DBS TRUSTEE LTD.,<br><br>Defendants. | CASE NO. 2:23-CV-03408-DSF-JPR<br><br>**DBS BANK LTD.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Removal Date: May 4, 2023<br>Date:  December 11, 2023<br>Time:  1:30 p.m.<br>Honorable Dale S. Fischer<br><br>[Notice of Motion and Motion; Declaration of Timothy D. Reynolds; Request for Judicial Notice; and [Proposed] Order filed concurrently herewith] |

DBS BANK LTD.'S MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................1

II.     RELEVANT FACTUAL BACKGROUND ..................................................3

    A.    The Structure of and Parties to the REIT................................................3

    B.    The Yuans Participate in the Preparation of the Draft Prospectus .......4

    C.    The Prospectus.........................................................................................5

    D.    The Initial Public Offering and Loan ....................................................6

    E.    The City of Pasadena's Complaint Against Urban Commons .............7

    F.    The Current Action .................................................................................7

III.    ARGUMENT.....................................................................................................8

    A.    Legal Standard........................................................................................8

    B.    Plaintiff's Negligent Misrepresentation Claim Must Be
        Dismissed .................................................................................................9

        1.    The Amended Complaint Fails to Cure the Time Flaw
            Regarding the Sheraton Pasadena Allegations .........................9

        2.    Plaintiff's Queen Mary Allegations are Defeated by the
            Very Documents Upon Which it Relies .................................11

        3.    Plaintiff Still Relies on Non-Actionable Puffery .....................15

        4.    Plaintiff's Reliance on an Email Sent by Someone Other
            Than DBS Bank or DBS Trustee Confuses the Law ..............18

    C.    Plaintiff's Unjust Enrichment Claim Fails.........................................19

    D.    Plaintiff's Infirm Group Pleading Does Not Save the Amended
        Complaint. .............................................................................................20

IV.     CONCLUSION ...............................................................................................21

DBS BANK LTD.'S MOTION TO
DISMISS

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re All Terrain Vehicle Litig.*,
   771 F. Supp. 1057 (C.D. Cal. 1991), *aff'd in part*, 979 F.2d 755
   (9th Cir. 1992) ...................................................................................15

*Andrew Smith Co. v. Paul's Pak, Inc.*,
   2009 WL 765687 (N.D. Cal. Mar. 20, 2009)....................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................8

*Avakian v. Wells Fargo Bank, N.A.*,
   827 F. App'x 765 (9th Cir. 2020)......................................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................8

*Blatty v. N.Y. Times Co.*,
   42 Cal. 3d 1033 (1986) ....................................................................11

*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*,
   162 Cal. App. 4th 858 (2008)..........................................................19

*Bull v. Chandler*,
   1992 WL 103686 (N.D. Cal. March 12, 1992)................................16

*C.D.T.S. No. 1 v. UBS AG*,
   2013 WL 657031 (S.D.N.Y. Dec. 13, 2013) ...................................15

*Coto Settlement v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010).............................................................3

*Culver Clinic Dev., Inc. v. Harms Software, Inc.*,
   2022 WL 79832 (C.D. Cal. Jan. 7, 2022) (Fischer, J.)................8, 10

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010)..........................................................16

*In re Draudt*,
   2016 WL 4267794 (C.D. Cal. Aug. 12, 2016)................................12

*Eur. Travel Agency Corp. v. Allstate Ins. Co.*,
   600 F. Supp. 3d 1099 (C.D. Cal. 2022) (Fischer, J.)......................18

DBS BANK LTD.'S MOTION TO
DISMISS

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Finkelstein v. AXA Equitable Life Ins. Co.*,
  2017 WL 10443167 (N.D. Cal. June 21, 2017) ...................................................15

*Gerawan Farming, Inc. v. Rehrig Pac. Co.*,
  2013 WL 1982797 (E.D. Cal. May 13, 2013), *aff'd*, 587 F. App'x
  654 (Fed. Cir. 2014).............................................................................................20

*Gilmore v. Wells Fargo Bank, N.A.*,
  2015 WL 13297965 (N.D. Cal. May 19, 2015) ...................................................17

*Glen Holly Ent., Inc. v. Tektronix, Inc.*,
  100 F. Supp. 2d 1086 (C.D. Cal. 1999)...............................................................16

*Glenn K. Jackson Inc. v. Roe*,
  273 F.3d 1192 (9th Cir. 2001)..............................................................................10

*Jackson v. Fischer*,
  931 F. Supp. 2d 1049 (N.D. Cal. 2013)...........................................................2, 18

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ...................................................................................2, 19

*In re Liberty Tax, Inc. Sec. Litig.*,
  435 F. Supp. 3d 457 (E.D.N.Y. 2020).................................................................15

*McDonald v. Compellent Techs., Inc.*,
  805 F. Supp. 2d 725 (D. Minn. 2011), *mod. and superseded on
  other grounds* 2011 WL 13228408 (D. Minn. Aug. 3, 2011) ...........................10

*McKinniss v. Gen. Mills, Inc.*,
  2007 WL 4762172 (C.D. Cal. Sep. 18, 2007)......................................................17

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008)................................................................................8

*Merchants Fire Assurance Corp. of New York* v. *Retail Credit Co.*,
  206 Cal. App. 2d 55 (1962)..................................................................................14

*Neu-Visions Sports v. Soren/McAdam/Bartells*,
  86 Cal. App. 4th 303 (2000).................................................................................13

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
  442 F.3d 741 (9th Cir. 2006)..................................................................................3

DBS BANK LTD.'S MOTION TO
                                                                  DISMISS

**TABLE OF AUTHORITIES**

**(Continued)**                                                                Page(s)

*San Francisco Design Center Associates v. Portman Companies*,
    41 Cal. App. 4th 29 (1995)...................................................................................13

*In re Seagate Tech. LLC Litig.*,
    233 F. Supp. 3d 776 (N.D. Cal. 2017)..................................................................15

*Shamsian v. Atl. Richfield Co.*,
    107 Cal. App. 4th 967 (2003)..................................................................................9

*Snyder v. Bank of Am., N.A.*,
    2018 WL 1136268 (N.D. Cal. Jan. 26, 2018)......................................................12

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
    2 Cal. App. 4th 153 (1991)....................................................................................13

*Trishan Air, Inc. v. Fed. Ins. Co.*,
    2008 WL 5532027 (C.D. Cal. Dec. 22, 2008)......................................................18

*Ultimate Franchises v. Parsons*,
    2018 U.S. Dist. LEXIS 225489 (C.D. Cal. July 10, 2018)..................................14

**Statutes**

Pasadena Mun. Code 4.44.................................................................................................9

**Other**

Federal Rule of Civil Procedure Rule 12(b)(2).........................................................3, 8

Federal Rule of Civil Procedure Rule 9(b) .............................................................8, 9

Federal Rules of Civil Procedure Rule 11 ...................................................................8

DBS BANK LTD.'S MOTION TO
                                                                DISMISS

## I.    INTRODUCTION

Plaintiff Lodging USA LendCo, LLC's ("Plaintiff" or "LendCo") second attempt to state claims against Defendants DBS Bank Ltd. ("DBS Bank") and DBS Trustee Ltd. ("DBS Trustee" and together with DBS Bank, the "Defendants") fails to redress the fatal infirmities in its original pleading.   To wit, the Amended Complaint doubles down on its failed central tenant that Plaintiff was induced by purported misrepresentations in the Eagle Hospitality Trust ("EHT") prospectus, and drafts thereto, to make an $89 million loan to a party that is neither DBS Bank nor DBS Trustee.   The Amended Complaint also preserves Plaintiff's sought remedy of "restitution and disgorgement" of that $89 million loan, despite that neither DBS Bank nor DBS Trustee ever received it.   Dkt. No. 23 ¶¶ 72, 76.   As explained by the Court in the order on the prior motion to dismiss, Plaintiff cannot recover in restitution where DBS Bank was never in possession of this loan.   Dkt. No. 22 at 7. The reassertion of this botched proposition simply confirms what was suspected in Plaintiff's prior pleading: Plaintiff's true grievance is with Urban Commons—both the maker of the statements as the Sponsor and Manager of EHT and the prior owner of the majority of the properties comprising the 12 of 18 properties in the initial public offering ("IPO") portfolio—not the Defendants.   *Id*. ¶ 74.   Premised on a faulty narrative, it is no surprise that the Amended Complaint's attempt to assert claims for negligent misrepresentation and unjust enrichment is riddled with logic flaws and misunderstandings of the law that prove catastrophic to Plaintiff's claims.[1]

With regard to Plaintiff's negligent misrepresentation claim, Plaintiff relies on four categories of misrepresentations, none of which are actionable.   First, Plaintiff declined to rectify the fatal timing issue—that DBS Bank should have known that EHT would fail, and therefore statements in the prospectus were false, because the

---

[1] Plaintiff does not reassert a claim for violations of the California Unfair Competition Law following the Court's order on DBS Bank's Motion to Dismiss. Dkt. No. 22.

DBS BANK LTD.'S MOTION TO DISMISS

Sheraton Pasadena failed to pay taxes *after the prospectus was released*. Instead, Plaintiff adds a new purported misrepresentation regarding that property's revenues that occurred *even earlier*, only highlighting the incredulity of this theory. Put simply, Plaintiff alleges no facts that suggest DBS Bank would have reason to know that any statements in the prospectus, or drafts thereto, made *prior* to the alleged knowledge-triggering event would be misleading. Second, Plaintiff adds purported misstatements regarding the Queen Mary that do nothing for its claim. Urban Commons, as the seller and prior owner, provided the information for those statements; Plaintiff mischaracterizes them; and Plaintiff adopts the same time-traveling theory to suggest that Defendants should have known the statements were false before the alleged knowledge-triggering event occurred. Third, Plaintiff still relies on non-actionable puffery. And fourth, Plaintiff confuses negligent misrepresentation for fraud by omission to claim that the Defendants had a duty to disclose or correct a different party's purported misstatement. This is not the law. *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1068 (N.D. Cal. 2013) (while some states allow a duty to disclose theory for negligent misrepresentation, California requires an affirmative statement).

As for its unjust enrichment claim, despite the Court's clear holding on the prior motion to dismiss that Plaintiff did not state a claim because DBS Bank was not the recipient of the $89 million loan, Dkt. No. 22 at 8, Plaintiff maintains its theory, alleging that "Urban Commons and the various shell corporate entities . . . received the benefit." Dkt. No. 23 ¶ 74. Plaintiff only adds that a monetary benefit was conferred to the Defendants via the fees that they continued to receive after the loan was made. But the Court was clear here too. Absent a direct payment to the Defendants, Plaintiff would need to allege a vested interest in Defendants' fees. Dkt. No. 22 at 7. Because Plaintiff did not do anything to *earn* a right to those fees, this,

DBS BANK LTD.'S MOTION TO DISMISS

too, fails. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1449 (2003) (vested interest generally arises when a plaintiff earns, like unpaid wages).

Lastly, Plaintiff's efforts to correct its failed group pleading infirmity only reveals that it has no claim against DBS Trustee. DBS Trustee is not a proper party.[2]

Accordingly, the Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    The Structure of and Parties to the REIT

In late 2017, two real estate investors in California, operating as Urban Commons sought to use hotels that they owned for a real estate investment trust that would be publicly traded. Dkt. No. 23 ¶ 19. Urban Commons formed the "Eagle Hospitality Group" to facilitate the creation of EHT. Dkt. No. 23 ¶ 19.

Urban Commons acted as Sponsor of EHT, contributing its own properties, as well as purchasing properties, for the REIT. The REIT Manager was Eagle Hospitality REIT Management Pte. Ltd. *Id.* ¶ 25. The REIT Manager was "indirectly owned" by the principals of Urban Commons. Declaration of Timothy D. Reynolds ("Reynolds Decl.") Ex. A (Prospectus) at 56.[3] The REIT Manager assumed the typical management role for a REIT, implementing the key strategies, including those for asset management and investments. *Id.*

---

[2] Specially Appearing DBS Trustee Ltd. separately brings a motion to dismiss pursuant to Rule 12(b)(2) and otherwise joins in the arguments of DBS Bank's motion.

[3] DBS Bank requests judicial notice of documents incorporated by reference in the Complaint and/or matters of public record in its Request for Judicial Notice filed concurrently herewith. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("On a motion to dismiss, we may consider materials incorporated into the complaint or matters of public record."); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (noting that a court "may take judicial notice of court filings and other matters of public record").

DBS BANK LTD.'S MOTION TO DISMISS

Urban Commons sought the assistance of DBS Bank to serve as the REIT's Financial Adviser and Issue Manager of the IPO for the REIT. *Id*. ¶ 23. DBS Bank also served alongside five major and respected financial institutions as Joint Bookrunners and alongside four of the Joint Bookrunners as secured lenders. Dkt. No. 23 ¶ 23; Reynolds Decl. Ex. A at 134. As set forth in the prospectus for EHT, the Joint Bookrunners would receive a maximum of 3.0% of the total proceeds of the IPO and the issuance of the cornerstone stapled securities. *Id*. ¶ 24; Reynolds Decl. Ex. A at 84.

As a separate matter, DBS Trustee was appointed the Trustee of the REIT. Dkt. No. 23 ¶ 24. For its fees, DBS Trustee was not to receive more than 0.1% per annum of the value of the REIT's deposited properties, subject to a minimum of $15,000 per month, excluding out-of-pocket expenses and Goods and Services tax. Reynolds Decl. Ex. A at 39. It also received a one-time inception fee of up to $60,000. *Id*. at 355.

EHT's initial portfolio consisted of 18 hotels across the United States with a total of 5,420 rooms, having an aggregate value of over $1.2 billion. Dkt. No. 23 ¶ 22. Urban Commons bought six of these properties from hospitality investors Frank Yuan and Jerome Yuan operating as ASAP Holdings, LLC ("ASAP") before selling to EHT.[4] *Id*. ¶¶ 2, 22. The Yuans are also LendCo's principals.

**B.     The Yuans Participate in the Preparation of the Draft Prospectus**

Plaintiff alleges that in early 2019, DBS Bank engaged in communications with and sent Plaintiff draft versions of the prospectus for the REIT and other financial documents pertaining to two properties in the portfolio: (1) the Queen Mary and (2) the Sheraton Pasadena. Dkt. No. 23 ¶¶ 41-46. The email communications were circulated by DBS Bank as a request for information from the prior owners of the properties in the REIT (i.e., Urban Commons and ASAP/the Yuans), which was

---

[4] Plaintiff does not allege when ASAP sold the properties to Urban Commons. Dkt. No. 23 ¶¶ 2, 22.

- 4 -                    DBS BANK LTD.'S MOTION TO DISMISS

used to prepare portions of the prospectus.  Reynolds Decl. Ex. B, C, D.  First, with regard to the Queen Mary, Plaintiff alleges that from January 7, 2019 to January 30, 2019, DBS Bank sent various emails and documents, which Plaintiff purports indicate that the Queen Mary did not require capital expenditures from Urban Commons for immediate repairs.  Dkt. No. 23 ¶¶ 41, 43, 45.  Second, Plaintiff alleges that drafts of the prospectus circulated on January 25, 2019 and January 30, 2019 contained revenue per room and forecast information as to the Sheraton Pasadena that suggested that there may be revenue growth.  *Id*. ¶¶ 42-43.

### C.    The Prospectus

The final prospectus was issued on May 16, 2019 (the "Prospectus").  Reynolds Decl. Ex. A.  The Prospectus set forth a number of statements regarding the experience, reputation, and ability of the entities involved with the REIT.  In the Amended Complaint, Plaintiff focuses on the Prospectus' statements that (1) the REIT was "well-structured for stability and growth," (2) DBS Bank, Urban Commons, and DBS Trustee all had relevant experience, and (3) the REIT had adequate internal controls.  Dkt. No. 23 ¶¶ 46, 65.

The Prospectus also set forth a number of warnings to investors.  Reynolds Decl. Ex. A at 17, 95-129.  For example, it identified that the Prospectus contained forward-looking statements and disclosed that they "reflect the current views of the REIT Manager and/or the Trustee-Manager concerning future events, these statements and financial information necessarily involve risks, uncertainties and assumptions."  *Id*. at 17.  It further explained that "[a]ctual performance could differ materially from these forward-looking statements and financial information" and that investors "should not place any reliance on" them.  *Id*.

Likewise, the Prospectus detailed the various risks relating to the hospitality industry, the properties, the REIT's operations, investing in real estate, and the structure of the REIT.  *Id*. at 95-129.  These risks included that "the Master Lessees

- 5 -                    DBS BANK LTD.'S MOTION TO DISMISS

may not maintain the Properties properly" and that there is no assurance the properties will be managed, maintained, and operated properly. *Id*. at 105. The Prospectus also disclosed that EHT itself faced risks associated with debt financing, including the risk that their cash flow will be insufficient to meet required payments of principal and interest under such financing and to make distributions to Stapled Security holders. *Id.* at 113.

### D. The Initial Public Offering and Loan

The IPO for the REIT was purportedly scheduled to occur on April 18, 2019, and subsequently rescheduled for April 24, 2019. Dkt. No. 23 ¶¶ 29, 47. When it was rescheduled, Frank Yuan allegedly sent an email on March 12, 2019, asking why the IPO was delayed and whether it was because it was missing "some filing documents[.]" *Id*. Plaintiff alleges that Steven L. Litchenfeld, who was counsel for Urban Commons during the IPO negotiations, responded that the delay was due to mechanics. *Id*. Plaintiff does not alleged that DBS Bank or DBS Trustee stated anything on that email communication, but only that DBS Bank was "copied." *Id*.

Shortly thereafter, in April 2019, Plaintiff alleges that Urban Commons reported that one of the original members of the banking syndicate could no longer offer its committed portion of the financing facility, resulting in an $89 million shortfall for the IPO. *Id*. ¶ 48. Plaintiff alleges that in response to this shortfall, DBS Bank approached the principals of ASAP with an option to prevent "the IPO [from being] delayed and [ ] losing the value of its underlying properties": to provide an $89 million loan to EHT. *Id*. LendCo was formed to facilitate the payment of this loan. *Id*. ¶ 44. Plaintiff alleges that this promissory note facilitating the loan was made to a subsidiary of EHT on May 22, 2019 (the "Promissory Note"), but the Prospectus, which was issued on May 16, 2019, detailed the circumstances of this loan. Reynolds Decl. Ex. A at 151. Two days later, on May 24, 2019, EHT's stapled

- 6 -                          DBS BANK LTD.'S MOTION TO DISMISS

securities (which includes EHT) were issued to investors and listed on the SGX. *Id*. ¶ 46. The IPO ultimately resulted in $565 million in investor funds.

In March of 2020, Plaintiff alleges that a bank issued a notice of default and acceleration to EHT, making its $341 million financing facility immediately payable. *Id*. ¶ 47. EHT thereafter voluntarily suspended trading. *Id*. On January 18, 2021, Plaintiff alleges that DBS Bank caused EHT to file Chapter 11. *Id*. ¶ 55. As a result, 15 of the 18 hotel properties were sold through the bankruptcy proceeding. *Id*. There were purportedly failures of the Master Lessees to pay rent, some of which predated COVID-19, but were exacerbated by the pandemic, and non-payments of certain tourism and occupancy taxes at the Sheraton Pasadena beginning in May 2019.

### E. The City of Pasadena's Complaint Against Urban Commons

On April 9, 2020, the City of Pasadena initiated a proceeding against Urban Commons and its related entities. Reynolds Decl. Ex. E (Sheraton TOT Complaint). It alleged that Urban Commons failed to remit transient occupancy taxes ("TOT") and tourism business improvement taxes ("TBID")—*due at the end of each month*—from May 2019 through February 2020. *Id*. ¶ 14; *see also id*. ¶¶ 10-11. The City of Pasadena did not notify Urban Commons of any failure to pay the taxes until November 1, 2019, which related to July, August, and September 2019 failures. *Id*. ¶ 16. Urban Commons received another notice on February 25, 2020 regarding the failure to pay taxes from May 2019 through November 2019. *Id*. ¶ 17.

### F. The Current Action

Plaintiff filed its Complaint in the Superior Court of California for the County of Los Angeles on March 23, 2023, alleging claims for (1) negligent misrepresentation, (2) violation of California's Unfair Competition Law, and (3) unjust enrichment. On May 4, 2023, DBS Bank timely removed the action to this

- 7 -                              DBS BANK LTD.'S MOTION TO DISMISS

Court on the basis of diversity jurisdiction, before DBS Trustee and DBS Group Holding Ltd. ("DBS Group") had been served.  Dkt. No. 1.

On June 12, 2023, DBS Bank filed a motion to dismiss the complaint.  Dkt. No. 12.  The parties completed briefing on July 3, 2023, and the Court entered an order granting the motion on July 19, 2023.  Dkt. No. 22.  The Court found, *inter alia*, that (1) Plaintiff failed to plead negligent misrepresentation with particularity; (2) Plaintiff was not entitled to restitution under California's unfair competition law (the "UCL"); (3) Plaintiff did not allege facts that gave rise to an unjust enrichment claim; and (4) Plaintiff engaged in improper shotgun pleading.  *Id*.  The Court granted leave to amend, but cautioned Plaintiff to comply with Rule 11 of the Federal Rules of Civil Procedure and required Plaintiff to provide a redlined version of any amended complaint to chambers.  Plaintiff filed its Amended Complaint on August 21, 2023.  Dkt. No. 23.  Plaintiff did not reallege a claim under the UCL and did not include DBS Group in the Amended Complaint.

## III.   ARGUMENT

### A.   Legal Standard

Under Federal Rule of Civil Procedure Rule 12(b)(6), dismissal is required "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Whether a complaint contains sufficient factual matter turns on whether the claim stated is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

Where the alleged claims sound in fraud, the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to the entire complaint. *See Avakian v. Wells Fargo Bank, N.A.*, 827 F. App'x 765, 766 (9th Cir. 2020) (A "[c]laim[] for . . .

DBS BANK LTD.'S MOTION TO DISMISS

negligent misrepresentation [is a] fraud-based claim[ ] and must meet the heightened pleading requirements of Rule 9(b)."); *Culver Clinic Dev., Inc. v. Harms Software, Inc.*, 2022 WL 79832, at *9 (C.D. Cal. Jan. 7, 2022) (Fischer, J.) ("Claims for negligent misrepresentation – as claims grounded in fraud – are subject to the heightened pleading requirements of Rule 9(b) and must be pleaded with particularity"). Rule 9(b) requires Plaintiff to state the circumstances of fraud with particularity, alleging the "who, what, when, where, and how" of the fraudulent activity. *Id*. at *8.

## B.   Plaintiff's Negligent Misrepresentation Claim Must Be Dismissed

Plaintiff's amended allegations supporting its negligent misrepresentation claim do not save the Amended Complaint from dismissal. *See Shamsian v. Atl. Richfield Co.*, 107 Cal. App. 4th 967, 983 (2003) (negligent misrepresentation requires: (i) the misrepresentation of a past or existing material fact, (ii) without reasonable ground for believing it to be true, (iii) with intent to induce another's reliance on the fact misrepresented, (iv) justifiable reliance on the misrepresentation, and (v) resulting damage). The Amended Complaint relies on four categories of purported misrepresentations: (1) statements regarding the Sheraton Pasadena; (2) representations concerning the Queen Mary; (3) statements regarding the REIT's structure; and (4) an email sent by Urban Commons' counsel. Dkt. No. 23 ¶¶ 40-47. None of the allegations support an actionable claim.

### 1.   The Amended Complaint Fails to Cure the Time Flaw Regarding the Sheraton Pasadena Allegations

The Amended Complaint's allegations do nothing to resolve the inherent timing flaw in Plaintiff's negligent misrepresentation theory. Indeed, in the original complaint, Plaintiff asserted that statements in the draft versions of the Prospectus that DBS Bank circulated regarding the REIT's value and experience were false because Urban Commons had been failing to pay taxes to the City of Pasadena

- 9 -                    DBS BANK LTD.'S MOTION TO DISMISS

beginning at the end of May 2019.  Dkt. No. 1-2 ¶ 46; Reynolds Decl. Ex. E ¶¶ 10-11; *see also* Pasadena Municipal Code 4.44 (explaining that TOT taxes are due at the end of each month).  DBS Bank, rightfully, pointed out that the allegations fail to demonstrate how DBS Bank could know or should have known that its statements in the Prospectus were false when made because, by Plaintiff's own allegations, any such failures by Urban Commons did not occur *until after the Prospectus' release. And Urban Commons was not notified of this failure until February 2020*. Reynolds Decl. Ex. E ¶ 17.  *Culver Clinic Dev., Inc. v. Harms Software, Inc.*, 2022 WL 79832, at *9 (Fischer, J.) (negligent misrepresentation claim was dismissed because plaintiffs did not plead that defendant knew or should have known that the statements were false when made); *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1200 n.2 (9th Cir. 2001) (negligent misrepresentation requires a past or existing material fact).  Plaintiff's theory was impossible, essentially claiming that DBS Bank could predict the future and knew that *Urban Commons* would *later* fail to pay taxes connected to one of 18 hotels in the portfolio.

Because Plaintiff undoubtedly cannot cure such logic flaw, Plaintiff instead inserts additional purported misrepresentations about the Sheraton Pasadena, *occurring even earlier than the Prospectus*.  Dkt. No. 23 ¶ 42.  Plaintiff alleges that DBS Bank sent an excerpt from the draft Prospectus on January 25, 2019, which contained information about the Sheraton Pasadena's revenue per room for 2016-2018 and forecasts for 2019 and 2020.  *Id*. ¶ 42.  This does not allege that DBS Bank knew or should have known that Urban Commons would fail to pay taxes at the end of May 2019.

Plaintiff's other new allegations do not demonstrate the falsity of any of DBS Bank's statements.   For instance, Plaintiff asserts that DBS Bank made representations regarding the Sheraton Pasadena's revenue and forecast.  *Id*. ¶ 42. But those figures are not then false at the time that they were made because Urban

DBS BANK LTD.'S MOTION TO DISMISS

Commons later failed to pay taxes. *See, e.g.*, *McDonald v. Compellent Techs., Inc.*, 805 F.Supp.2d 725, 737 (D. Minn. 2011) ("Forecasts are, of course, estimates. Estimates by their very nature often prove to be inaccurate."), *mod. and superseded on other grounds* 2011 WL 13228408 (D. Minn. Aug. 3, 2011). Nor does Plaintiff's statement that DBS Bank was negligent in providing these figures because the hotel "was already struggling to make basic tax payments" change this outcome. *Id.* ¶ 44. This statement is demonstrably false by Plaintiff's own allegations, as well as the documents, and the Court need not accept them. *Id.* ("The City of Pasadena disclosed, *inter alia*, that Urban Commons had failed to pay various outstanding taxes and assessments **starting in May 2019**") (emphasis in original); *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1040 (1986) ("when the allegations of the complaint contradict or are inconsistent with such facts, the reviewing court accepts the latter and rejects the former"). Plaintiff's allegations are impossible as asserted.

### 2. Plaintiff's Queen Mary Allegations are Defeated by the Very Documents Upon Which it Relies

The Amended Complaint introduces a new theory for the negligent misrepresentation claim centered on statements regarding the Queen Mary. Dkt. No. 23 ¶¶ 43, 45. But the documents containing those statements confirm that none could support a negligent misrepresentation claim at all, let alone *against DBS Bank or DBS Trustee*. Rather, this new basis for the claim simply reconfirms that Plaintiff seeks to substitute the Defendants for claims Plaintiff wished it could assert against Urban Commons.

First, the email correspondence that Plaintiff references demonstrates that the "Overview of Financials" containing the purported misleading statements regarding the Queen Mary's capital expenditures was prepared with information provided by Urban Commons. Dkt. No. 23 ¶ 43; Reynolds Decl. Ex. D. In fact, the "Overview of Financials" was a summary of financial performance for the various properties

DBS BANK LTD.'S MOTION TO DISMISS

provided not only by Urban Commons, but by the Yuans themselves. Reynolds Decl. Ex. D at 1. Even assuming anything in the "Overview of Financials" could be characterized as false or misleading at the time, such information was not provided by DBS Bank. *See id.* It was provided by Urban Commons. *Id.* And, because the Yuans were also on the emails, they knew this. The same is true for the January 7, 2019 email. Reynolds Decl. Ex. B. While Plaintiff relies on the email thread and report to state its claims, the email confirms that DBS Bank requested information and Urban Commons provided the information regarding the Queen Mary. *Id.* at 3 (requesting Urban Commons to "annotate in the excel sheet").

Second, Plaintiff does not accurately represent the purported statements in the documents. *See In re Draudt,* 2016 WL 4267794, at *4 (C.D. Cal. Aug. 12, 2016) ("Court does not need to accept as true allegations in the complaint that are directly contradicted by documents subject to judicial notice."). Plaintiff asserts that the draft Prospectus sent to Plaintiff on January 25, 2019 "stated that it had obtained the *necessary* $23 million dollar [sic] capital expenditure contributions from the City of Long Beach." Dkt. No. 23 ¶ 45 (emphasis added). This is wrong. The draft Prospectus actually stated that "[t]he Sponsor negotiated . . . *ensured* capital contributions of US $[23.5] million provided by the City of Long Beach." Reynolds Decl. Ex. C at 16 (emphasis added) (alteration in original). The Prospectus neither stated, nor even implied, that the capital contributions received from the City of Long Beach were the *only* contributions "necessary" for the Queen Mary. *Id.* It simply explained that the Sponsor had negotiated that amount and, thus, there was an "ensured"—i.e., guaranteed—contribution of $23.5 million. *Id.* That Plaintiff interpreted that the $23.5 million was the only contribution necessary does not give rise to a negligent misrepresentation claim. *Snyder v. Bank of Am., N.A.*, WL 11396268, at *9 (N.D. Cal. Jan. 26, 2018) (plaintiff's interpretation of a statement did not give rise to a negligent misrepresentation claim).

- 12 -                    DBS BANK LTD.'S MOTION TO DISMISS

Likewise, Plaintiff alleges that "DBS 'confirm[ed] that there is no capital expenditures required by the REIT or the master lessee in FY19 and FY20.'" Dkt. No. 23 ¶ 43. Again, this is a manipulation of the document. The "Overview of Financials"—which contained information provided by Urban Commons—noted that the capital expenditures were to be discussed and confirmed. Reynolds Decl. Ex. D at 1, 9. The Overview asked if "there [were] any capital expenditure [sic] required (which will be paid by the lessee) that may impact the functioning of these revenues and therefore income stream." *Id*. at 9. (alteration added). Then, it stated "*[t]o confirm that* there is no capital expenditures required by the REIT or the master lessee in FY19 or FY20 (for disclosure purposes)." *Id*. (emphasis added). These items were to be "discuss[ed]." *Id*.

Finally, Plaintiff relies on a statement regarding minimal capital expenditures for the Queen Mary in the Prospectus, but omit that the Prospectus stated that "the Managers *believed*" that such capital expenditures would not be necessary. Reynolds Decl. Ex. A at 288 (emphasis added); *Neu-Visions Sports v. Soren/McAdam/Bartells,* 86 Cal. App. 4th 303, 309 (2000) ("the representations were not actionable because they were opinions as to future events"); *San Francisco Design Center Associates v. Portman Companies*, 41 Cal. App. 4th 29, 43-44 (1995) ("It is hornbook law that an actionable misrepresentation must be made about past or existing facts;   statements regarding future events are merely deemed opinions.").[5] The Managers were the REIT Manager and the Trustee Manager (*i.e.*, another Eagle Hospitality entity) and the statement was forward-looking, which the Prospectus expressly disclaimed. *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal. App. 4th 153, 158 (1991) ("predictions as to future events" are "not actionable"); Reynolds Decl. Ex.  A at 18.

---

[5] This same language was used (by Urban Commons) in the January 7, 2019 email. Reynolds Decl. Ex. B at 3 ("we do not *believe* we have anything that absolutely must be addressed immediately") (emphasis added).

- 13 -                      DBS BANK LTD.'S MOTION TO DISMISS

None of the statements upon which Plaintiff relies reflects an affirmative statement that *no* capital expenditures were necessary on the Queen Mary.

Third, and even if the Defendants had conveyed that no expenditures were required, Plaintiff still fails to allege that Defendants knew or should have known that significantly more expenditures were necessary. Plaintiff relies on the City of Long Beach's objection to the bankruptcy proceeding, which contained a reference to and attached a marine survey of the Queen Mary dated January 17, 2017. Dkt. No. 23 ¶ 45. In essence, Plaintiff claims that the Defendants should have known that Urban Commons' statements regarding the capital expenditures were untrue because the marine survey stated that there was a "'five year time horizon for having the urgent repairs completed,' which was to conclude in 2022." *Id*. But Plaintiff does not allege that the Defendants ever saw this survey or would even have reason to know that this survey existed.[6] *Id*. Plaintiff alleges that there were "monthly meetings regarding the Queen Mary repairs" to attempt to fill this gap, but omits crucial details from this assertion. *Id*. Indeed, the City of Long Beach's 2021 Objection confirms that not only were the Defendants not present at the meeting, but the meetings did not occur ***until 2020—after the Overview and final Prospectus was provided to Plaintiff***. Reynolds Decl. Ex. F at 11 (explaining that the City, the Debtor (i.e., EHT and Urban Commons entities) and Moffatt & Nichol attended monthly

---

[6] The survey was not addressed to Defendants and Plaintiff does not allege that they otherwise saw the survey. Reynolds Decl. Ex. G at 3. Thus, Plaintiff's allegation regarding the January 7, 2019 email is likewise insufficient to support its claim. Dkt. No. 23 ¶ 41. No knowledge allegations are asserted.

- 14 -                    DBS BANK LTD.'S MOTION TO DISMISS

meetings "over the past year").[7]  Thus, Plaintiff's allegations are defeated by simple logic.[8]

### 3.     Plaintiff Still Relies on Non-Actionable Puffery

Plaintiff maintains its theory that Prospectus statements that the REIT was "well-structured for stability and growth," had "adequate internal controls," and was managed by entities that had relevant experience and value were misleading.  *Id*. ¶ 46.   However, Plaintiff now asserts that these statements were "negligently misrepresented" because (1) EHT was not well structured due to the known conflicts of interest, (2) DBS Bank failed to conduct appropriate due diligence, and (3) the managers discussed in the Prospectus were incapable of adequately managing the underlying properties.  *Id*.

These grounds for the purported falsity of the statements in the Prospectus serve only to highlight why a "reasonable [investor] would not interpret the statement[s] as a factual claim upon which he or she could rely," and, thus, they are non-actionable puffery.  *In re All Terrain Vehicle Litig*., 771 F. Supp. 1057, 1061 (C.D. Cal. 1991) (citation omitted), *aff'd in part*, 979 F.2d 755 (9th Cir. 1992). Representations regarding how "well" an investment vehicle is structured or the "adequacy" of its internal controls are inherently vague and subjective; not specific

---

[7] Separately, each of Plaintiff's allegations pertaining to the Sheraton Pasadena and Queen Mary in draft versions of the Prospectus and other financial documents are barred by the statute of limitations.  Plaintiff filed this action on March 23, 2023. These allegations occurred more than three years prior to that date.  *See e.g.*, *Merchants Fire Assurance Corp. of New York* v. *Retail Credit Co.*, 206 Cal. App. 2d 55,  (1962) (claim  for negligent  misrepresentation had  a three-year statute  of limitations); *Ultimate Franchises v. Parsons*, 2018 U.S. Dist. LEXIS 225489, at *11 (C.D. Cal. July 10, 2018) (misrepresentations were made outside of the limitations period and plaintiff failed to allege facts demonstrating why they could not discover their alleged falsity sooner).

[8] Finally, Plaintiff does not allege that it relied on any statements regarding the Queen Mary and the Sheraton Pasadena in making the loan.  Dkt. No. 23 ¶ 70.

- 15 -                           DBS BANK LTD.'S MOTION TO DISMISS

or measurable, as required to be actionable. *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 792 (N.D. Cal. 2017) (statements regarding "proven quality and performance" and "reliability" were mere puffery); *Finkelstein v. AXA Equitable Life Ins. Co.*, 2017 WL 10443167, at *3 (N.D. Cal. June 21, 2017) (representations that defendant possessed the "skill[] . . . resources, expertise, and experience to advise Plaintiff" was not actionable); *In re Liberty Tax, Inc. Sec. Litig.*, 435 F. Supp. 3d 457, 467 (E.D.N.Y. 2020) (statements that "internal controls" were "effective" were non-actionable puffery); *C.D.T.S. No. 1 v. UBS AG,* 2013 WL 6576031, at *4 (S.D.N.Y. Dec. 13, 2013) (same). Plaintiff's attempts to demonstrate why those statements are false—through its own subjective assessment of the structure of the REIT—proves this point. [9]

Moreover, Plaintiff's explanation for the falsity of the statements also demonstrates that Plaintiff's theory is really one grounded in wrongdoing by hindsight. *E.g.*, *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1098 (C.D. Cal. 1999) (statements are "not fraudulent simply because they turn out to be untrue"). The Amended Complaint dedicates eleven paragraphs of allegations to the ultimate liquidity issues and bankruptcy that occurred *following* the issuance of the Prospectus, the IPO, and the loan. Dkt. No. 23 ¶¶ 8, 53-62. Plaintiff repeatedly relies on "the collapse of the [EHT]" to assert that DBS Bank's statements regarding structure and value were false. But simply because EHT ultimately faced liquidity issues does not render generalized value statements false when made. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010) ("When valuing corporations, however, investors do not rely on vague statements of optimism like 'good,' 'well-

---

[9] Additionally, the Prospectus contained disclosures of risks associated with EHT's lack of control over the Master Lessees or the Hotel Managers in the management of the properties or in the payment of rent and other expenses. Reynolds Decl. Ex. A at 106. *See Bull v. Chandler*, 1992 WL 103686, at *6 (N.D. Cal. March 12, 1992) (finding no justifiable reliance where the plaintiff was given offering materials that had plain disclosures of risk).

- 16 -                              DBS BANK LTD.'S MOTION TO DISMISS

regarded,' or other feel good monikers."). Plaintiff still does not include any facts that would suggest that DBS Bank or the Sponsor did not have the experience that it suggested it did the Prospectus. Nor does Plaintiff offer more than conclusory assertions that the REIT *must have been* poorly structured and lacking in internal controls because it eventually failed.

Plaintiff's over-emphasis on DBS Bank's purported "conflicting roles" to allege that the REIT could not have been "well-structured" also falls flat. Dkt. No. 23 ¶¶ 4, 5, 9, 23, 27, 28, 46, 68. Not only does Plaintiff not describe how DBS Bank's roles are conflicting, but Plaintiff overlooks that each of DBS Bank *and* DBS Trustee's roles for the REIT were discussed and disclosed *in detail* in the Prospectus. *See, e.g.*, Reynolds Decl. Ex. A at 1 (describing DBS Bank's role as Sole Financial Advisor, Issue Manager, and Joint Bookrunner and DBS Trustee's role as the REIT Trustee), 34 (explaining DBS Trustee's role as Trustee), 55 (describing the subscription agreement for Stapled Securities in which DBS Bank entered back-to-back on behalf of its private bank clients), 122 (describing DBS Bank's role as a lender), 403 (detailing the number of Stapled Securities that DBS Bank would be underwritten). To the extent Plaintiff relies on these roles as the reason for why the statements regarding the structure of the REIT were false, Plaintiff had this information from the very beginning. *See e.g.*, *McKinniss v. Gen. Mills, Inc.*, 2007 WL 4762172, at * 5 (C.D. Cal. Sep. 18, 2007) (plaintiff cannot allege negligent misrepresentation claim because defendant disclosed the relevant information and plaintiff simply failed to pay attention to it). Plaintiff cannot now complain about that structure because the REIT ultimately failed when it possessed all of the relevant information to make that risk assessment before it chose to sell its properties. Thus, even if a subjective statement regarding the REIT's structure could amount to more than puffery, Plaintiff is barred from asserting negligent misrepresentation on this basis.

- 17 -                               DBS BANK LTD.'S MOTION TO DISMISS

### 4. Plaintiff's Reliance on an Email Sent by Someone Other Than DBS Bank or DBS Trustee Confuses the Law

Plaintiff also inappropriately relies on a statement that was not made by the Defendants. The original complaint misrepresented that DBS Bank's counsel, Steven L. Litchenfeld, sent an email stating that everything with the IPO was going well and that timing issues were just due to mechanics. Dkt. No. 1-2 ¶ 41. DBS Bank noted in its Motion to Dismiss that Mr. Litchenfeld was not DBS Bank's counsel, but was, instead, counsel for Urban Commons and EHT. Dkt. No. 12-1 at 6, n.5. The Amended Complaint corrects this error; yet, Plaintiff maintains that such statement can support its negligent misrepresentation claim against Defendants. Dkt. No. 23 ¶ 47. It cannot.

Neither DBS Bank nor DBS Trustee are the maker of such statement, and thus cannot be liable as a matter of law. *Gilmore v. Wells Fargo Bank, N.A.*, 2015 WL 13297965, at *8 (N.D. Cal. May 19, 2015) (defendant did not make the allegedly false statement so it could not be liable for negligent misrepresentation). Plaintiff seemingly suggests that because DBS Bank was copied on the email, that it "tacitly approved" Mr. Litchenfeld's statement and had a "duty to disclose the entire truth about the information missing from the Prospectus." Dkt. No. 23 ¶ 47. Plaintiff attempts to bolster this proposition by repeatedly referencing DBS Bank's "control over the IPO" and "unique and superior knowledge" to allege that DBS Bank somehow owed Plaintiff a duty to disclose or correct another person's purported misstatements. Dkt. No. 23 ¶¶ 47, 9. Plaintiff misunderstands the law. It is well-settled that, in California, negligent misrepresentation claims cannot be based on omissions; they must only be based on positive assertions. *See Trishan Air, Inc. v. Fed. Ins. Co.*, 2008 WL 5532027, at *4 (C.D. Cal. Dec. 22, 2008); *see also Eur. Travel Agency Corp. v. Allstate Ins. Co.*, 600 F. Supp. 3d 1099, 1105 (C.D. Cal. 2022) (Fischer, J.) (explaining that "a positive assertion is required; an omission or an implied assertion or representation is not sufficient").

- 18 -                    DBS BANK LTD.'S MOTION TO DISMISS

Negligent misrepresentation does not consider whether a defendant owes the plaintiff any duty. "While courts in some states have held that failure to disclose where there is a duty to disclose may suffice to support a negligent misrepresentation claim, the California Court of Appeal held in Wilson v. Century 21 Great Western Realty, [sic] 15 Cal. App. 4th 298, 18 Cal. Rptr. 2d 779 (1993) that based on the California statutory language, negligent misrepresentation specifically requires a 'positive assertion.'" *Jackson*, 931 F. Supp. 2d at 1068. And while claims for fraudulent concealment grounded in a duty to disclose exist in California, Plaintiff cannot circumvent the more stringent requirements of pleading actual intent to defraud by styling it as a negligent misrepresentation claim. *Andrew Smith Co. v. Paul's Pak, Inc.*, 2009 WL 765687, at *7 (N.D. Cal. Mar. 20, 2009) (dismissing a negligent misrepresentation claim that appeared to be grounded in a theory of a "concealment or omission in light of a duty to disclose" because that claim was not alleged, let alone alleged with particularity); *see also Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal. App. 4th 858, 868 (2008) (fraud by omission requires that the defendant "intentionally concealed or suppressed the fact with intent to defraud the plaintiff"). Plaintiff's claim fails.

### C.    Plaintiff's Unjust Enrichment Claim Fails

Plaintiff's renewed unjust enrichment claim fails for the same reasons it failed before. As the Court acknowledged in its Order, "there is no standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" Dkt. No. 22 at 7 (*citing Astiana v. Hain Celestial Grp., Inc.*, 783 F. 3d 753, 762 (9th Cir. 2015)). When a plaintiff alleges unjust enrichment, however, a court may construe it as a claim for quasi-contract, but the plaintiff must allege that no contract exists between the parties. *Id*. The Court dismissed Plaintiff's unjust enrichment claim because "LendCo does not allege that DBS Bank was not a party to the promissory note or that DBS Bank was the recipient of the $89 million." *Id*. The Amended Complaint

DBS BANK LTD.'S MOTION TO DISMISS

does not correct these insufficiencies. Instead, Plaintiff confirms that DBS Bank never received the $89 million; "Urban Commons and the various shell corporate entities used for the IPO" received the $89 million. Dkt. No. 23 ¶ 74.

Plaintiff then tries to save its claim by stating the Plaintiff conferred a monetary benefit to the Defendants because the loan allowed (1) DBS Bank to receive a portion of the $17M Joint Bookrunner Commission and (2) DBS Trustee to receive fees from its supervision of the REIT. *Id.* This is insufficient for an unjust enrichment claim. In the UCL claim section of the Order, the Court explained that while restitution is broader than just mandating the return of money or property that was once in the possession of the plaintiff, the plaintiff still needs to have a vested interest in that property. *Id.* at 7; *see also Korea Supply*, 29 Cal.4th at 1149. A vested interest requires Plaintiff to have *earned* the money in the Defendants' possession. *See Korea Supply,* 29 Cal.4th at 1150 (explaining that a vested interest generally arises in unpaid wages where they were earned and concluding that an expectancy interest in receipt of a commission was simply damages); *Gerawan Farming, Inc. v. Rehrig Pac. Co.*, 2013 WL 1982797, at *7 (E.D. Cal. May 13, 2013), *aff'd*, 587 F. App'x 654 (Fed. Cir. 2014) (plaintiff did not have a vested interest in the profits associated with a product plaintiff alleged defendant did not have the authority to sell). The Complaint did not allege facts supporting the position that Plaintiff had an ownership interested or a vested interest in the money it seeks to recover from DBS Bank. Dkt. No. 22 at 7. Nor does the Amended Complaint. Plaintiff never (1) provided any money to DBS Bank or (2) expected any payment back from the Defendants' fees for something Plaintiff earned. This claim fails again.

**D.    Plaintiff's Infirm Group Pleading Does Not Save the Amended Complaint**

Following the order on the motion to dismiss, Plaintiff attempts to address its group pleading deficiency in its original pleading, which failed to "differentiate

- 20 -                     DBS BANK LTD.'S MOTION TO DISMISS

between Defendants and their conduct." Dkt. No. 22 at 9. In doing so, however, Plaintiff reveals that it cannot state any fact specific to any defendant and uses "Defendants" as an impermissible pleading crutch to include improper parties. The Amended Complaint, like the original pleading, is devoid of factual allegations against DBS Trustee. DBS Trustee is hardly mentioned in the substance of the Amended Complaint. Dkt. No. 23 ¶¶ 4, 8, 9, 23, 24, 26, 44, 46, 74. In those few references, Plaintiff only manages to allege: (1) DBS Trustee was the Trustee of the REIT, *Id.* ¶ 23; (2) DBS Trustee received fees related to the management of the trust, *id.* ¶¶ 4, 9, 24, 74; (3) DBS Trustee failed to appropriately monitor the REIT, *id.* ¶¶ 8, 26; and (4) DBS Trustee was responsible for conducting due diligence (but Plaintiff does not state it failed to do so), *id.* ¶ 44.

Notably absent from these allegations is any hint of wrongdoing. Plaintiff neither alleges that DBS Trustee made any misrepresentations—in fact, Plaintiff is clear that it alleges "DBS" to have made misrepresentations about DBS Trustee's due diligence on the REIT, *id.* ¶ 46—nor induced Plaintiff to make the loan to Urban Commons. And a conclusory assertion that DBS Trustee must have failed in its duties as Trustee is not enough to sustain *any* claim against it.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Amended Complaint without leave to amend.

DBS BANK LTD.'S MOTION TO DISMISS

DATED:  September 26, 2023

PAUL HASTINGS LLP
D. SCOTT CARLTON
TIMOTHY D. REYNOLDS
ALYSSA K. TAPPER


By:*/s/ D. Scott Carlton*
        D. SCOTT CARLTON

Attorneys for Defendant DBS BANK LTD. and Specially Appearing Defendant DBS TRUSTEE LTD.

DBS BANK LTD.'S MOTION TO DISMISS

## CERTIFICATION

The undersigned, counsel of record for DBS Bank LTD, certifies that this brief contains 6,426 words, which complies with the word limit of L.R. 11-6.1.

Date:  September 26, 2023

By: */s/ D. Scott Carlton*
D. SCOTT CARLTON

- 23 -                    DBS BANK LTD.'S MOTION TO DISMISS