# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| LODGING USA LENDCO, LLC,<br>        Plaintiff,<br><br>           v.<br><br>DBS BANK LTD, et al.,<br>        Defendant. | CV 23-3408 DSF (JPRx)<br><br>Order GRANTING Motions to<br>Dismiss (Dkt. 27, Dkt. 28) |

Defendant DBS Bank Ltd. moves to dismiss Plaintiff Lodging USA LendCo, LLC's Complaint, Dkt. 23 (AC), for failure to state a claim and failure to plead claims sounding in fraud with the requisite particularity. Dkt. 27 (Mot.). DBS Trustee Ltd. moves to dismiss for lack of personal jurisdiction. Dkt. 28. LendCo opposes. Dkt. 29 (Opp'n), Dkt. 30. The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15.

## I. Background

This action arises out of an initial public offering (IPO) of a real estate investment trust (REIT). See generally Dkt. 22 (Order) 1–3. Urban Commons LLC partnered with DBS Bank to put together a REIT that would be publicly traded. AC ¶2. It also approached Frank and Jerome Yuan about investing in the REIT by contributing six hotels to the REIT's portfolio. Id. The Yuans would in turn receive payment for the hotels from the proceeds of the IPO. AC ¶2-3.

DBS Bank advised on the IPO as its issue manager, a secured lender to the REIT, a joint bookrunner, and underwriter. AC ¶¶23-24.

DBS Bank appointed DBS Trustee, its wholly-owned subsidiary, to serve as trustee.  AC ¶23.

In early 2019, in preparation for the IPO, DBS Bank circulated copies of draft prospectuses along with other financial information and documents to the involved parties.  AC ¶¶41–46.  These communications concerned Urban Commons and several California properties.  Id.  They are the subject of the negligent misrepresentation claim in this action.

In April 2019, on the eve of the IPO, Urban Commons reported that one of the original members of the banking syndicate involved in the IPO was withdrawing.  AC ¶48.  Urban Commons approached the Yuans to cover an $89 million shortfall in IPO-related fees and expenses.  Id.  DBS Bank negotiated a deal between the Yuans and Urban Commons, where Urban Commons would retain $89 million owed to the Yuans for their contribution of the six properties and later repay the shortfall to the Yuans.  AC ¶49.  The Yuans' loan to Urban Commons was made on May 22, 2019 through a corporation, LendCo, which the Yuans subsequently assumed control of, and is the named plaintiff in this action.  AC ¶¶50–51.

The IPO went forward on May 24, 2019, but by March 2020 the REIT defaulted and suspended trading due to fraud by Urban Commons.  AC ¶¶8, 52.  In the subsequent bankruptcy, the Yuans' $89 million loan was wiped out and their properties were seized and sold.  AC ¶62.

LendCo initially asserted causes of action against DBS Bank for (1) negligent misrepresentation, (2) violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq., and (3) unjust enrichment/restitution.  Dkt 1-2 (Compl.).  The Court dismissed the complaint for failure to state a claim because LendCo failed to allege its misrepresentation claim with sufficient particularity, it did not plead a vested interest required by the UCL, and the basis of its unjust enrichment claim was unclear.  Dkt. 22 (Order) 5–8.  LendCo amended its complaint, dropping its UCL claim and adding facts

regarding the statements it claims to be actionable under the tort of negligent misrepresentation and the basis of its unjust enrichment claim.

## II. Legal Standards

### A.    Personal Jurisdiction

A defendant may seek dismissal of an action due to lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction."  In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 741 (9th Cir. 2013); Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).  "When a district court acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss."  Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995).  "The plaintiff cannot simply rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true."  Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (simplified).  "[M]ere bare bones assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden."  Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007).  "Because there is no statutory method for resolving [personal jurisdiction], the mode of its determination is left to the trial court."  Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis."  Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404 (9th Cir. 1994).  "First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute."  Id.  "Second, the exercise of jurisdiction must comport with federal due process."  Id. at 1404-05.  The Due Process Clause permits the exercise of personal jurisdiction if the defendant has sufficient "minimum contacts" with the

3

forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>LNS Enters. LLC v. Cont'l Motors, Inc.</u>, 22 F.4th 852, 858 (9th Cir. 2022) (quoting <u>Walden v. Fiore</u>, 571 U.S. 277, 283 (2014)).  Because California's long-arm statute reaches as far as due process allows, <u>see</u> C.C.P. § 410.10, the Court need only consider whether the exercise of jurisdiction comports with due process.  <u>See also</u> <u>Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme</u>, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (per curiam).

Personal jurisdiction may be either general or specific.  <u>See</u> <u>Helicopteros Nacionales de Colombia, S.A. v.  Hall</u>, 466 U.S. 408, 414 nn. 8 & 9 (1984).  A court may exercise general jurisdiction "only when a defendant is 'essentially at home' in the State." <u>Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.</u>, 141 S. Ct. 1017, 1024 (2021) (quoting <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011)).  Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." <u>Ford Motor Co.</u>, 141 S. Ct. at 1024.

## B.    Failure to State a Claim

Rule 12(b)(6) allows an attack on the pleadings for failure to state a claim on which relief can be granted.  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam).  Allegations contradicted by matters properly subject to judicial notice or by exhibit need not be accepted as true, <u>Produce Pay, Inc. v. Izguerra Produce, Inc.</u>, 39 F.4th 1158, 1161 (9th Cir. 2022); and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Id.</u> (alteration in original) (quoting <u>Twombly</u>, 550 U.S. at 557).  A complaint must "state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570.  This means that the complaint must plead "factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. There must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively . . . and factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Ruling on a motion to dismiss will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). "Dismissal under Rule 12(b)(6) is proper when the complaint . . . fails to allege sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

"Normally, when a viable case may be pled, a district court should freely grant leave to amend." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1058 (9th Cir. 2011). Leave to amend should be granted even if the plaintiff did not request leave, unless it is clear that the complaint cannot be cured by the allegations of different or additional facts. Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). "Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment." Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Allegations of fraud are excepted from the "notice pleading" standard of Rule 8(a)(2). Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 513 (2002). Under Federal Rule of Civil Procedure 9(b), fraud claims

must be pleaded with particularity.  <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1126 (9th Cir. 2009).  Fraud claims under Rule 9(b) must still meet <u>Iqbal</u>'s plausibility standard.  <u>Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1055 (9th Cir. 2011).  "[A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction."  <u>In re GlenFed, Inc. Sec. Litig.</u>, 42 F.3d 1541, 1548 (9th Cir. 1994) (superseded by statute on other grounds).  A plaintiff must include "an account of the time, place, and specific content of the false representations" at issue.  <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764 (9th Cir. 2007) (simplified).  Fraud allegations must "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong."  <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003).

## III. Discussion

### A.    Personal Jurisdiction

DBS Trustee is a Signapore-based company.  Dkt. 28-2 (Yuen Decl.) ¶3.  It has no employees in California, no office or address here, and has never registered to do business in the state.  <u>Id.</u> ¶¶6, 8, 11.  Lendco does not argue that DBS Trustee is subject to general jurisdiction in California.

The Ninth Circuit employs a three-part test to determine whether a court has specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

6

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Davis v. Cranfield Aerospace Sols., Ltd., 71 F.4th 1154, 1161-62 (9th Cir. 2023).  Plaintiff bears the burden of satisfying the first two prongs. Id.

"[T]he first prong may be satisfied by purposeful availment, by purposeful direction, or by some combination thereof."  Id. (quotation marks omitted).  Courts evaluate purposeful direction using a three-part "effects" test that "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing Calder v. Jones, 465 U.S. 783 (1984)).

LendCo has not alleged purposeful availment.  It has not pleaded any facts allowing the inference that DBS Trustee engaged in "economic activity within California" such as "contracting directly with private distributors located in California[.]"  As You Sow v. Crawford Lab'ys, Inc., 50 Cal. App. 4th 1859, 1871 (1996), as modified (Dec. 13, 1996).  DBS Trustee is incorporated in Singapore and has its place of business there.  Yuen Decl. ¶3.  It has not contracted, negotiated, made any promises, or entered into any transactions with LendCo in California.  Yuen Decl. ¶5.

LendCo recites the test for purposeful direction, but never explains what intentional act DBS Trustee committed that was expressly aimed at California.  Dkt. 30 at 10–11.  Instead, LendCo argues that the court may exercise personal jurisdiction over DBS Trustee because "DBS Trustee was tasked with monitoring the REIT Manager and the underlying properties of the REIT, of which eight out of 16 were located in California, creating multiple continuing relationships and obligations between DBS Trustee and the State."  Dkt. 30 at 13.

This allegation, even if true, is insufficient to support personal jurisdiction.  Rather Lendco has alleged "untargeted negligence" by

DBS Trustee that incidentally involves property in California.  Calder, 465 U.S. at 789.  That the REIT DBS Trustee oversaw from Singapore had property in California as part of its portfolio is the kind of "random, fortuitous, or attenuated contact[]" with a forum that does not give rise to personal jurisdiction.  Walden, 571 U.S. at 286.  LendCo cites no case suggesting that the location of the property in a trust confers personal jurisdiction for tort claims over the trustee.

Because LendCo fails to satisfy the first prong, DBS Trustee's Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED.[1]

## B.  Failure to State a Claim

### 1.  Negligent Misrepresentation

The elements of a negligent misrepresentation claim are "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage."  Tindell v. Murphy, 22 Cal. App. 5th 1239, 1252 (2018).  "The tort of negligent misrepresentation does not require scienter or intent to defraud.  It encompasses the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true, and the

---

[1] LendCo requests that the Court permit the parties to conduct jurisdictional discovery.  Dkt. 30 at 15 n.4.  The Court has broad discretion to permit or deny such discovery.  See Butcher's Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986).  "Discovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."  Boschetto, 539 F.3d at 1020.  But discovery is not appropriate where it is based "on little more than a hunch that it might yield jurisdictionally relevant facts."  Id.

There are no pertinent controverted facts and LendCo does not explain with any specificity what evidence it expects jurisdictional discovery to produce.  LendCo's request for jurisdictional discovery is denied.

positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true." Small v. Fritz Companies, Inc., 30 Cal. 4th 167, 173–74 (2003) (cleaned up). "However, a positive assertion is required; an omission or an implied assertion or representation is not sufficient." Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC, 158 Cal. App. 4th 226, 243 (2007) (simplified).

Claims for negligent misrepresentation – as claims grounded in fraud – are subject to the heightened pleading requirements of Rule 9(b) and must be pleaded with particularity. Avakian v. Wells Fargo Bank, N.A., 827 F. App'x 765, 766 (9th Cir. 2020) (holding "claims for unfair business practices, intentional misrepresentation, fraud, and negligent misrepresentation are all fraud-based claims, and must meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.").

LendCo alleges that it was induced into making its $89 million loan to Urban Commons through a series of misrepresentations detailed below.

> a.  Statements Regarding the Sheraton Pasadena

DBS Bank sent a draft prospectus and overview of financials to the Yuans in January 2019.  AC ¶44.  These emails included DBS Bank's forecast for the Sheraton Pasadena, and indicated significant revenue growth based on room rental rates.  AC ¶¶42–43.  Urban Commons was responsible for managing this property.  Urban Commons eventually failed in its duties as REIT manager and stopped paying the Sheraton's property's taxes in May 2019, leading the city to bring proceedings against it.  Id.  What tax payments Urban Commons did make were delivered by hand in cashier checks.  AC ¶44.

LendCo alleges that the statements about revenue growth in the final prospectus (Prospectus) and drafts were misleading considering the financially precarious state of the Sheraton Pasadena.  AC ¶¶42, 65.  It claims that DBS Bank was grossly negligent or reckless for not conducting adequate diligence to discover that Urban Commons was

failing as REIT manager before circulating the revenue growth projections.  AC ¶44.

LendCo has not pleaded that DBS Bank had "no reasonable grounds" for believing its forecast to be accurate.  Tindell, 22 Cal. App. 5th at 1252.  Lendco must allege information that DBS Bank possessed in January 2019 that made its financial forecasts unreasonable.  See Apollo, 158 Cal. App. 4th at 244 (holding that statement was unreasonable even if believed to be true in light of information that speaker had about restrictions on stock offering).  DBS Bank could not have possessed knowledge of Urban Commons' future failure as REIT manager in January 2019, and no amount of diligence could have uncovered it, because Urban Commons did not stop paying taxes until May.  LendCo has not alleged any other information that would provide "no reasonable grounds" for DBS's projections.

LendCo's contention that DBS should have conducted more diligence does not sound in fraud.  The statute of limitations for a negligent misrepresentation claim is either two or three years, depending on whether the action sounds in negligence or fraud. Ventura Cnty. Nat. Bank v. Macker, 49 Cal. App. 4th 1528, 1531 (1996).  This action was filed on March 23, 2023.  Three years prior to March 23, 2023, is March 23, 2020.  This is well after any alleged misrepresentations were made that could have induced the loan to Urban Commons in May 2019.  DBS Bank argues that any misrepresentations allegedly made in January 2019 are barred.  Mot. at 15 n.7.  LendCo does not address this argument in its opposition.

The Court considers LendCo to have conceded that this suit was brought outside the limitations period for the purported representations, and LendCo offers no justification for its delay in filing suit.  See Rafael Arroyo, Jr. v. Sun Rise Prop. LLC, et al. Additional Party Names: HB Fuel, Inc., No. SACV19952JGBGJSX, 2020 WL 5260493, at *3 (C.D. Cal. May 15, 2020) ("Plaintiff fails to address this argument in their Opposition, and therefore the Court considers Plaintiff to have conceded the point.").

10

b.      <u>Statements Regarding the Queen Mary</u>

The Queen Mary was included on a list of properties in the Prospectus that "the Managers believe[d] . . . w[ould] require minimal capital expenditure."  Dkt. 27-4 (Ex. A) 266.[2]

In January 2019, DBS Bank circulated emails and documents that outlined capital expenditure requirements for the Queen Mary. AC ¶¶ 41, 43.   However, at the time, there was a marine survey of the property "that explicitly advised that the estimated total cost of repair to the Queen Mary hotel, for known conditions including urgently-need[ed] structural work, would require capital expenditures of from $235 to $289 million."  AC ¶45.  These large sums were not circulated by DBS Bank to the IPO group.

However, as explained above, this suit was brought outside the limitations period for these statements.

---

[2] The doctrine of incorporation by reference allows a district court to "consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." <u>Coto Settlement v. Eisenberg</u>, 593 F.3d 1031, 1038 (9th Cir. 2010).  "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." <u>Khoja v. Orexigen Therapeutics, Inc.</u>, 899 F.3d 988, 1002 (9th Cir. 2018).

The Prospectus forms the basis of LendCo's negligent misrepresentation claim.  It is quoted extensively throughout the amended complaint.  AC ¶¶31–40.  LendCo does not contend that the Prospectus submitted by DBS Bank as Exhibit A materially differs from the drafts circulated prior to the loan to Urban Commons and does not oppose DBS Bank's reliance on it for its legal arguments.  The Prospectus is incorporated by reference.

c.      Prospectus Statements

LendCo also alleges that the Prospectus stated that the REIT was "well-structured [for] stability and grow[th]," and had "adequate management and internal controls," and "the same managers that DBS had touted in the Prospectus were utterly incapable on (sic) adequately managing the underlying properties." AC ¶¶46, 68.  LendCo claims that the REIT was not well-structured due to a known conflict of interest.  AC ¶46.  And it alleges that these statements misleadingly indicate that DBS Bank conducted the appropriate due diligence when assessing the value of the properties and Urban Commons personnel and management.  Id.

Statements that are "generalized, vague and unspecific assertions, constituting mere puffery" are not actionable under the tort of negligent misrepresentation.  Glen Holly Ent., Inc. v. Tektronix Inc., 343 F.3d 1000, 1015 (9th Cir.), opinion amended on denial of reh'g, 352 F.3d 367 (9th Cir. 2003).  "Corporate 'puffing' involves expressing an opinion that is not capable of objective verification."  Macomb Cnty. Employees' Ret. Sys. v. Align Tech., Inc., 39 F.4th 1092, 1098 (9th Cir. 2022).  The claim that the REIT was "well-structured [for] stability and growth," is puffery.  See id at 1099 (holding that "China is a great growth market for us" was puffery).

A statement about internal controls, however, may amount to more than puffery.  In In re Wells Fargo & Co. S'holder Derivative Litig., 282 F. Supp. 3d 1074, 1103 (N.D. Cal. 2017), the court found that statements outlining a "specific set of compensation risk management policies and practices and [those] describ[ing] active oversight and monitoring that would not encourage excessive risktaking[,]" went beyond puffery.  Id.  These statements "misleadingly conveyed that Wells Fargo's compensation structures emphasized risk management and encouraged long-term stockholder value[,]" when they allegedly did not.  Id.  However, here, LendCo has not pleaded any statements in the Prospectus regarding internal controls that created a misleading representation, other than the generalized assertion that they were "adequate."

12

Additionally, LendCo's allegation that there were "known conflicts of interest" is unsubstantiated. AC ¶46. LendCo alleges that DBS Bank's conflicting roles as an issue manager and secured lender, AC ¶¶23–26, along with DBS Trustee's role as trustee, id., gave DBS and DBS Trustee "a strong incentive to effectuate the IPO regardless of the risk that the conflicting roles they approved of would result in oversight and management failures for the . . . REIT." AC ¶27. But these roles were disclosed in the Prospectus. Ex. A at 1, 34, 55, 122, 403. LendCo cannot plausibly plead that DBS's statements were misleading due to the roles played by DBS Bank and Trustee in the transaction when LendCo was made aware of these roles. See Circle Click Media LLC v. Regus Mgmt. Grp. LLC, No. 12-04000 SC, 2013 WL 57861, at *11 (N.D. Cal. Jan. 3, 2013) (dismissing negligent misrepresentation claim because office agreement disclosed the fees defendants allegedly concealed).

> d.      Litchenfeld Statement

LendCo alleges that "[o]n March 12, 2019, after it became apparent that the IPO date needed to be rescheduled to April 24, 2019[,]" Frank Yuan wrote to the IPO team, including DBS: "how firm is 4/24 or the reason behind it or is it because missing some filing documents such as Audit report, Prospectus, etc . . . ." AC ¶47. Urban Common's attorney assured Yuan that "everything is going very well and the deal is being very well received. The week delay in timing is just mechanics and nothing more." Id. LendCo claims that "[o]nce the question of whether there was anything missing from the Prospectus was partially answered, DBS had a duty to disclose the entire truth about the information missing from the Prospectus." Id.

LendCo cannot state a claim based on DBS Bank's silence because for the tort of negligent misrepresentation "a positive assertion is required; an omission or an implied assertion or representation is not sufficient." Apollo, 158 Cal. App. 4th at 243.

None of the statements alleged are actionable under the tort of negligent misrepresentation. Accordingly, DBS's Motion to Dismiss the First Cause of Action is GRANTED.

### 2.    Unjust Enrichment

As the Court previously stated, "there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015) (citing Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350 (2010); Jogani v. Superior Court, 165 Cal. App. 4th 901 (2008)). "When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" Id. (citing Rutherford Holdings, LLC v. Plaza Del Rey, 223 Cal.App. 4th 221, 231 (2014)).  "The elements of unjust enrichment are receipt of a benefit and unjust retention of the benefit." Cont'l Cas. Co. v. Enodis Corp., 417 F. App'x 668, 670 (9th Cir. 2011) (citing Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (2000)).

LendCo alleges that it conferred a monetary benefit on DBS by providing the $89 million capital shortfall that was necessary for the IPO.  AC ¶74.  This enabled DBS to receive $17 million in commission on the IPO, and DBS Trustee to receive fees for its supervision of the REIT.  Id.

"Where someone other than the plaintiff provided the benefit the defendants allegedly unjustly retained, as between the plaintiff and the defendant, the plaintiff is entitled to restitution from the defendant where the plaintiff has a better legal or equitable right." City of Oakland v. Oakland Raiders, 83 Cal. App. 5th 458, 479 (2022) (citing Rest.3d Restitution and Unjust Enrichment, § 48.).  A plaintiff must "identify a right in the disputed assets that is both recognized, and accorded priority over the interest of the defendant, under the law of the jurisdiction.  Proof merely that the defendant has received a windfall, that the plaintiff has been ill-treated, and that the third party's payment to the defendant (or the defendant's retention of payment as against the plaintiff) violates rules of good faith, basic

fairness, or common decency, does not suffice to make out a claim in restitution." Id.

LendCo did not supply the IPO commission or trustee fees to DBS Bank or DBS Trustee. It has not identified any right to the IPO commission or trustee fees that is recognized and accorded priority over the DBS entities. LendCo has failed to allege a cognizable unjust enrichment claim.

DBS's Motion to Dismiss the Second Cause of Action is GRANTED.

## IV. Conclusion

DBS Bank's Motion to Dismiss is GRANTED. DBS Trustee's Motion to Dismiss is also GRANTED. LendCo is granted leave to amend its complaint in conformity with this Order if it can do so consistent with Rule 11 of the Federal Rules of Civil Procedure. An amended complaint may be filed and served no later than January 26, 2024. Failure to file an amended complaint by that date will waive LendCo's right to do so and the case will be dismissed with prejudice. If LendCo chooses to file an amended complaint, it should carefully consider the other issues raised by Defendants' motions and amend its claims where appropriate. LendCo must provide a redlined version of the amended complaint to the Court's generic chambers email.

IT IS SO ORDERED.

Date: January 2, 2024

Dale S. Fischer
United States District Judge

15